# E. M. HOLMES v. A. C. WILKES and Others.[1]

June 25, 1915.

Nos. 19,215—(135).

**Actionable fraud.**

1. A vendor who induces the purchase of corporate stock by promising the vendee a salaried position with the corporation, knowing that the vendee will not be accepted for such position, and not intending that his representation will be made good, is guilty of actionable fraud.

**Same — evidence.**

2. Evidence *held* sufficient to sustain a finding that the plaintiff, to induce a purchase of corporate stock by one of the defendants, made such a representation.

**Exchange of property — rescission for fraud.**

3. The plaintiff, having by fraudulent representations, induced an exchange of stock owned by him for lands owned by the defendant, the stock by agreement of the plaintiff and the defendant being afterwards temporarily pledged for a debt primarily that of the plaintiff, and having been sold by the pledgee to pay the debt through the fraud of the plaintiff, he cannot complain that the stock was not restored to him upon a rescission of the exchange by the defendant.

Action in the district court for Mille Lacs county to determine adverse claims to certain vacant and unoccupied land. The case was tried before Parsons, J., who found that defendant William C. Doane was the owner in fee of the premises and that the contract, the deed from defendants Wilkes to plaintiff, and the mortgage from plaintiff to defendant bank, should be canceled. From the order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Laybourn & Lucas*, for appellant.

*C. L. McMillan* and *Charles Keith*, for respondents.

[1] Reported in 153 N. W. 308.

DIBELL, C.

This action was brought by the plaintiff against the defendants A. C. Wilkes, and his wife, Josephine Wilkes, and William C. Doane, and his wife, Essie P. Doane, to determine adverse claims to 120 acres in Mille Lacs county. The Market State Bank, which had an apparent mortgage on the lands, and Paul F. Ochu, its cashier, were afterwards made defendants on application of the other defendants. There were findings for the defendants; and the conclusions of law directed the cancelation of a deed to the plaintiff, hereinafter mentioned, the cancelation of an agreement for the exchange of the lands for corporate stock, and the cancelation of the mortgage held by the Market Bank. Plaintiff appeals from the order denying his motion for a new trial.

1. It is the law of this state that a vendor, who induces the purchase of his property by false representations, though promissory in nature, at the time not intending to perform them, and not intending that his representations will be made good, is guilty of actionable fraud. McElrath v. Electric Investments Co. 114 Minn. 358, 131 N. W. 380, and cases cited; Olson v. Smith, 116 Minn. 430, 134 N. W. 117.

2. A question of some difficulty is whether the evidence in the case at bar presents a state of facts justifying the application of the rule of law stated.

In August, 1913, the plaintiff and the defendant Wilkes entered into negotiations for the exchange of the lands involved for shares of stock in the Quaker Creamery Company. The court finds that for the purpose of inducing defendant Wilkes to make such exchange the plaintiff represented that he held a position with the company at a salary of $1,500, which in fact he had; that he would, as a part of the transaction, secure to Wilkes a position at the same salary, going so far as to say that the position had been secured; that the position was not secured; that the plaintiff knew at all times that he could not secure it for Wilkes; that he did not intend to do so; and that such representations were falsely and fraudulently made for the purpose of effecting the exchange and that Wilkes was induced thereby to make it.

We have examined the evidence in support of the findings recited. It is not entirely satisfactory. The trial court did not find it so; but it was of the opinion that fraud was fairly proved and we accept its finding. It said:

"While the testimony of defendant A. C. Wilkes is in some respects indefinite and unsatisfactory, I cannot escape the conclusion upon the whole record that plaintiff's part in the transaction was attended with fraud and overreaching throughout.

"It is apparent that Wilkes expected the position with the Creamery Company as a part of the trade and that Holmes understood that he expected it. It is also fairly clear that Holmes did not make the promise in good faith and that he had no intention of fulfilling it. He must have known that Wilkes could not fill such position satisfactorily and would not be accepted by the company. Holmes was the secretary and manager. His representations cannot be treated as a mere promise or conjecture as to something which was to occur in the future. They were intended to create in Wilkes the belief that it was, as a fact, Holmes' present intention to secure the position for Wilkes."

3. In making the trade the Mille Lacs county farm was put in at $10,000, less a mortgage of $1,000 to be cared for by Holmes, a net sum of $9,000, and the stock at $9,000, its face value. This stock of $9,000 was in the Security Bank at Minneapolis subject to a lien of $3,500 for a debt owed by Holmes. There was some difficulty in carrying out the details of the exchange. Neither party had ready money. Finally it was arranged in this way: Wilkes gave his note for $3,500 to the Market Bank. This was to be the obligation of Holmes, but he had borrowed to his capacity there. The $9,000 block of stock was to stand as collateral to it. With the $3,500 obtained Holmes released his block of stock in the Security Bank, and the stock, or rather stock in another company substituted by consent, then belonging to Wilkes, by agreement of Holmes and Wilkes, stood as collateral to the $3,500 note in the Market Bank. Holmes was a party to the note.

The Mille Lacs County farm was subject to a $1,000 mortgage.

Wilkes made a deed of it to Holmes, dated September 2, 1913, and placed it in escrow with one Piper to be delivered to Holmes upon the delivery to him of the $3,500 note canceled, and a satisfaction of the $1,000 mortgage. It was intended in a general way that Holmes would borrow $4,500 on the land, use $1,000 in discharging the first mortgage, and $3,500 in paying the $3,500 note, and this would complete the transaction, leaving Holmes with the deed to the farm and Wilkes with title to the $9,000 block of stock. This was not, however, done. The $3,500 note was renewed from time to time for a few days at a time. Holmes and the bank, as found by the court, contriving together and intending to defraud Wilkes, sold the $9,000 stock collateral to the $3,500 note for just the amount due on the note, thus paying it. The canceled note was then presented to Piper, the man holding the deed in escrow, and he delivered the deed to Holmes, who recorded it on November 24, 1913. The $1,000 mortgage was not satisfied. Holmes got possession of the deed wrongfully. This is the deed under which he claims. After trouble came, the defendants Wilkes, by a deed dated and recorded on November 3, 1913, deeded the farm to the defendant Doane. Holmes having procured the sale of the stock traded to Wilkes, the latter was not obliged to restore it as a condition to relief. It was collateral to Holmes' debt. He having wrongfully procured its sale for the payment of his own debt, and so that he might get possession of the deed then in escrow, cannot complain if judgment of rescission goes against him without restoration.

We have examined all other points made in the briefs; but what we have said necessarily disposes of the case.

Order affirmed.