HEALY, RESPONDENT, *v*. GINOFF ET AL., APPELLANTS.

(No. 5,312.)

(Submitted November 2, 1923. Decided November 28, 1923.)

[220 Pac. 539.]

*Real Property—Contracts of Sale—Mortgages—Foreclosure— Counterclaim—Fraud—Measure of Damages—Agency—Termination—Burden of Proof.*

Land Contract—Fraud—*Prima Facie* Case—Directed Verdict—Error.
   1.  In an action to foreclose a purchase-money mortgage upon land in which defendant interposed a counterclaim based upon alleged fraudulent representations by the seller as to the supply of water available to irrigate the lands, evidence of defendant *held* sufficient for submission to the jury on the question of his right to avoid his obligation and recover compensatory damages on the ground of fraud, and that the court erred in directing a verdict for plaintiff.

Same—Fraud—Successive Crop Failures.
   2.  Where a purchaser of land was aware after the first year of his occupancy that the representations by the seller as to the amount of water available for irrigation by reason of which he lost the first year's crop were false, his recovery of damages was limited to the amount represented by the loss of that crop, and he could not claim damages based upon four successive failures thereafter, he having planted the crops with knowledge that water could not be obtained for irrigation.

[69 Mont. 116.]

Same—Breach of Contract—Damages Recoverable.

3. Damages recoverable for a breach of contract of sale of farm lands are such as may fairly be supposed to have been within the contemplation of the parties when they entered into it and such as might naturally have been expected to result from its breach.

Same—Breach of Contract—Fraud—Measure of Damages.

4. The measure of damages for fraud in inducing the purchase of farm lands is the difference between their actual value at the date of sale and the contract price.

Same—Elements of Fraud—Evidence—Sufficiency—Jury Question.

5. The elements of actual fraud in a contract of sale are: a false representation, its materiality, the seller's knowledge of its falsity or ignorance of its truth, his intent that it should be acted upon by the buyer, the latter's ignorance of its falsity, reliance upon its truth and his consequent and proximate injury, and where the injured party has made out a *prima facie* case embracing such elements, it is error to direct a verdict for his opponent, the question whether or not there has been fraud generally being a question of fact for the jury.

Same—Principal and Agent—Continuation of Agency—Evidence—Notice to Agent is Notice to Principal.

6. Where the agency of one who was instrumental in making a sale of land was admitted by the seller (plaintiff), who made no contention that it had ever been terminated, the evidence on the contrary showing that such agent continued making sales of land for his principal in the same vicinity, the presumption obtains that the agency was still in being at a time thereafter when defendant notified the agent to so construct a ditch that water could be brought upon the land as agreed in the contract, and written notice to the agent was notice to the principal.

Agency—Termination—Burden of Proof on Principal.

7. The burden of proving that an agency, admitted to have existed at the time a land contract was consummated, had terminated at a time thereafter when the buyer gave notice to the agent of the seller demanding compliance with the terms of the contract was upon the principal.

Same—Relation may be Shown, How.

8. Where the authority of an agent is unwritten and express oral authority is not satisfactorily shown, such authority may be implied from acts and circumstances, and where the authority may not otherwise be shown, evidence describing the work performed by the agent in the course of his employment with the knowledge and implied acquiescence of the principal is admissible.

*Appeal from District Court, Powell County; Geo. B. Winston, Judge.*

---

4. Measure of damages for fraudulent representations in sale or exchange of real estate, see notes in 123 Am. St. Rep. 776; 8 L. R. A. (n. s.) 804; 16 L. R. A. (n. s.) 818.

ACTION by John J. Healy against Nick E. Ginoff and another. Judgment for plaintiff and defendants appeal. Reversed and remanded.

*Messrs. Russell, Madeen & Clarke,* for Appellants, submitted a brief; *Mr. Charles A. Russell* argued the cause orally.

*Mr. S. P. Wilson,* for Respondent, submitted a brief; *Mr. Charles E. Avery,* of Counsel, argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

In this case it appears that the defendants were desirous of making purchase of lands for agricultural purposes, and that the plaintiff through his agents, on September 16, 1916, induced them to contract for the purchase of certain land in Powell county, comprising 138 acres, said to have an adequate supply of water with which to irrigate the same. Defendants made purchase of such land, agreeing to pay therefor $6,200, $500 of which was paid in cash. The premises, together with a water right of 138 miner's inches from the north fork of the Big Blackfoot River for irrigation and domestic purposes, was conveyed to the defendants by warranty deed. As evidence of the defendants' indebtedness for the balance of the purchase price, on January 1, 1917, they executed and delivered six promissory notes to the plaintiff's agent, C. H. Muckler, as follows: One for $1,000, due January 1, 1918; two for $500 each, due respectively January 1, 1919, and January 1, 1920; two for $1,000 each, due respectively January 1, 1921, and January 1, 1922, and one for $1,700, due January 1, 1923. All are interest bearing at the rate of six per cent from date. As security for the payment of these several notes, the defendants executed a mortgage upon the lands and water right purchased by them from the plaintiff in favor of C. H. Muckler, plaintiff's agent. The first of the notes above described was fully paid in due course, and the remaining notes, together with the mortgage security, were regularly indorsed and assigned by

C. H. Muckler, without recourse, to the plaintiff October 3, 1917. The defendants having defaulted in the payment of the principal and interest on their indebtedness, this action was brought to foreclose the mortgage.

The complaint is in usual form, alleging the assignment of the notes and mortgage to the plaintiff, and defendants' default in the payment of the principal and interest due on such notes. Judgment was prayed for $4,700 as principal, $1,433.50 as interest due, making a total of $6,133.50. By their answer, the defendants admit the execution and delivery of the notes and mortgage, and affirmatively plead two counterclaims against the plaintiff. The first is for damages to the alleged amount of $5,748, because of the false and fraudulent representations made by the plaintiff's agents, C. H. Muckler and W. N. Glasscok; it being alleged that the lands purchased from the plaintiff are arid in character, and that it is necessary to irrigate them in order to successfully grow and produce crops thereon, and that without water for irrigation the lands are of little value. Further it is alleged that these agents of the plaintiff, while acting within the scope of their authority in the sale of such lands and in order to induce the defendants to make purchase thereof, and to pay therefor the agreed purchase price, with intent to deceive the defendants and induce them to purchase the lands, made false and fraudulent representations to them respecting such lands and water rights, which they had a right to rely upon; that the defendants believed such representations to be true and placed reliance upon them, thereby being induced to make purchase of the land and water rights, with resulting damages in consequence of the total failure of the plaintiff to furnish water for irrigation of the lands as covenanted and agreed. Damages are sought by this counterclaim for the alleged difference in the value of the lands with and without water for irrigation.

The second counterclaim pleaded is for $20,177.20 damages, predicated upon the loss of growing crops in the years 1917, 1918, 1919, 1920 and 1921, respectively, by reason of plain-

[69 Mont. 116.]

tiff's failure to furnish water with which to irrigate them. Damages are specifically alleged for each year, and are specified as the difference between the amount harvested and what would have been obtained had defendants been provided with sufficient water for irrigation, computed upon the basis of the market value of crops produced for the given year. For instance, as to the loss so sustained by the defendants in the year 1917, it is alleged:

"That at and during the year 1917, at the proper season of said year for sowing and planting crops, defendants properly prepared the ground and sowed and planted fifty-five acres of said lands to wheat, which properly germinated and commenced to grow and, had water been supplied, or had defendants been able to procure the water aforesaid for irrigating, the same would have for that year yielded and produced twenty-five bushels per acre, but that, by reason of defendants' inability to procure water for irrigating the same during said season, only 136 bushels of wheat were grown or produced on said fifty-five acres sowed to wheat. That the market price for the 1917 crop of wheat was $2.50 per bushel, and by reason of the premises aforesaid defendants suffered damages in the sum of $3,097.50.

"That at and during the year 1917, at the proper season of said year for sowing and planting crops; defendants properly prepared the ground and sowed and planted thirty acres of said premises to oats, which properly germinated and commenced to grow, and, had water been supplied, or had defendants been able to procure the water aforesaid for irrigating, the same would have for that year yielded and produced forty bushels per acre, but that by reason of defendants' inability to procure water for irrigating the same during said season, only 370 bushels of oats were grown or produced on said thirty acres sowed to oats; that the market price for the 1917 crop of oats was $.80 per bushel and by reason of the premises aforesaid defendants suffered damages in the sum of $544."

Issue was jointed by reply, and the cause was tried to a jury. Objection was by the court sustained to the introduction of any evidence in support of defendants' second counterclaim, and the jury upon the court's direction found a verdict for the plaintiff for the sum of $6,358.30. Judgment was entered on the verdict, and this appeal is from the judgment.

The defendants' assignments of error present two questions necessary to be considered in disposing of this appeal, which will be considered in their order.

1. Did the trial court err in directing a verdict for the [1] plaintiff? It is admitted that after the defendants had been shown the lands in question by plaintiff's agent, Glasscok, an agreement was reduced to writing a short time afterwards, on September 16, 1916, between the plaintiff through "C. H. Muckler, his agent," and Nick E. Ginoff, one of the defendants, whereby the plaintiff agreed to convey to him the lands in question "together with good and valid title to a one-twentieth interest in the Healy ditch, taken out of the north fork of the Blackfoot river, for irrigation and domestic purposes, being approximately 138 miner's inches"; it being further covenanted by the plaintiff in such agreement that he would convey to said Nick E. Ginoff, by good and sufficient warranty deed, a right of way over all lands owned by him for an irrigation ditch or canal to run from the large ditch now upon his lands to the land to be conveyed by him to said Ginoff, "it being understood that the right of way is to be such as is approved and satisfactory to the party of the second part (Ginoff). And it is further covenanted and agreed that the ditch to run (from) the main ditch to the land to be conveyed herein is to be constructed either by the party of the first part at its own cost and expense, or by the party of the second part, and in that event the party of the first part will pay to the party of the second part the actual cost of the construction of said ditch, not to exceed the sum of one hundred and twenty-five dollars ($125.00). It is further covenanted and agreed by the party of the first part

that the main ditch constructed by the party of the first part and the ditch to be built from the main ditch to the land to be conveyed as provided for herein will, when completed, convey the water to the land of the party of the second part.''

Further it is admitted that the lands and water rights were subsequently deeded by the plaintiff and his wife pursuant to such contract to the defendants Nick E. Ginoff and T. E. Ginoff, on October 30, 1916, and that the mortgage upon which foreclosure is sought in this action was executed to C. H. Muckler, as security for the balance due on the purchase price by the defendants on November 24, 1916. It appears that all negotiations leading up to the purchase of the lands were made by the defendant Nick Ginoff, with both Glasscok and Muckler as plaintiff's agents, and that when Glasscok took Nick Ginoff to inspect the lands in the fall of 1916, before the execution of the contract for the sale thereof, they did not inspect the irrigation system; Glasscok being in a hurry to return to Missoula and assuring Ginoff there was an abundance of water available from the Healy ditch for irrigation of the land. Ginoff, placing reliance upon Glasscok's statements and representations that the main Healy ditch was a fine ditch, and that there was ample water to irrigate the entire flat, did not then inspect the Healy irrigation canal, but returned with Glasscok to Missoula by automobile. Later in Missoula, before Ginoff executed the agreement for the purchase of the land, Muckler said: " 'For 1917, if that water didn't get on your place, I will guarantee to carry it in buckets, so the water will get to your place, so you will have it for your crop.' * * * He said: 'We can put it down in black and white, but,' he said, 'my word is as good as gold.' He said, 'The water will get there for the spring of 1917.' " The defendants, relying on these representations, moved upon the land in the fall of 1916, made improvements thereon, planted crops in the season of 1917, which were greatly reduced in quantity because of the defendants' inability to get water promised or at all for irrigating them.

The Healy ditch carried no water in 1917 and was not in shape to carry water.

We have carefully examined and considered all of the evidence introduced and offered by the defendants in support of their counterclaims and the court's rulings, and are of opinion that there was sufficient evidence to warrant submission to the jury of the question of the right of the defendants to avoid their obligation to the plaintiff and recover compensatory damages on the ground of fraud. Recovery of [2] damages on the second counterclaim should, in our opinion, be limited to the year 1917, unless barred by the statute of limitations, as the defendants were thereafter in possession of full knowledge of the conditions existing, and thereafter were not in position to continue planting crops, knowing there was no water with which to irrigate them, and hold plaintiff for successive crop failures because of the misrepresentations of his agents in the first instance.

For the breach of an obligation arising from contract as [3] in this case, the measure of damages is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom. (Sec. 8667, Rev. Codes 1921.) They are said to be such as may fairly have been supposed to have been within the contemplation of the parties when they entered into the contract, and such as might naturally be expected to result from its violation. (*Myers* v. *Bender*, 46 Mont. 497, Ann. Cas. 1916E, 245, 129 Pac. 330.)

By the first counterclaim it is sought to reduce the amount [4] of defendants' obligation to the plaintiff to the actual value of the land. It is predicated on a proper measure of damages for fraud in inducing the purchase of the property, *viz.:* The difference between the actual value of the property at the date of the sale and the contract price. (12 R. C. L., p. 453, sec. 199.) In case of the breach of a covenant of "seizin," if the breach is partial only, the damage is pre-

sumed to be "such proportion of the price as the value of the property affected by the breach bore at the time of the grant to the value of the whole property." (Sec. 8670, Rev. Codes 1921.) "When a fraudulent transaction is sought to be enforced in the courts, the defendant may set up the fraud as either a complete or partial defense, as the case may be, or else in mitigation of damages or ground for recoupment." (12 R. C. L., p. 408, sec. 154.)

In our opinion a *prima facie* case embracing the elements [5] of actual fraud was made by the defendants, *viz.:* "(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury." (26 C. J. 1062; *Lee* v. *Stockmen's National Bank,* 63 Mont. 262, 207 Pac. 623; *F. B. Connelly Co.* v. *Schlueter Bros., ante,* p. 65, 220 Pac. 103; sec. 7480, Rev. Codes 1921.)

"Whether or not there has been fraud in any given case is generally a question of fact. It is often said to be peculiarly a question for the jury, in cases in which a jury trial may be had, and that it should be submitted to them if there is substantial evidence to support a finding of its existence. Again, it is said that fraud is a mixed question of law and fact, to be determined by the jury, with the aid of such instructions as the court may give in regard to the principles of law applicable to the facts that may be proved to the satisfaction of the jury." (12 R. C. L., p. 444, sec. 188.)

The issue should have been presented to the jury.

2. Was it error for the court to exclude from evidence [6] defendant's offered Exhibit "C"? This alleged error arose in connection with the testimony of the defendant Nick E. Ginoff, in the following manner:

[69 Mont. 116.]

"Q. With reference to this ditch or lateral that would have to be constructed from your place to this ditch at the end of the ditch there somewhere, did you ever write any letter or communication to Mr. Muckler or to Mr. Healy about that? A. I did send them a registered letter.

"Q. Showing you Exhibit 'C,' parts 1 and 2, I will ask you what that is, Mr. Ginoff? A. This is the letter I wrote to Mr. Muckler and Mr. Healy about the water.

"Q. Let me understand you. This letter that you hold in your hand is the one that you sent to Mr. Healy? A. That is not the same letter. The copy sent to Mr. Healy has my signature on it, but this is a copy. We made three copies.

"Q. Now, if we may understand you, Mr. Ginoff (Mr. Russell gets the original letter and envelope); part 1, is that the letter that was mailed to Mr. Healy? A. That is the same letter.

"Q. Was it returned to you? A. It was returned to me twice.

"Q. Is that the envelope that was returned to you? A. That is the same envelope.

"Q. Did you send any letter of like import to Mr. Glasscok or Mr. Muckler? A. I sent the same letter to Mr. Muckler, and he received it.

"Q. How do you know? A. Because it didn't come back?

"Q. Did you ever talk to Mr. Muckler afterwards as to whether he received it or not?

"Mr. Wilson: We object to this as incompetent, irrelevant, and immaterial.

"The Court: Because Mr. Muckler was the agent for the defendant for the purpose of making this contract, his statements thereafter would not be binding upon the defendant in the action.   *   *   *

"Mr. Russell: We offer this in evidence.

"Mr. Wilson: To this offer plaintiff objects upon the ground that it is a self-serving declaration, and it is incompetent, irrelevant and immaterial; and it is statements of the con-

clusion of the writer and not a statement of any facts involved in the action, or any fact that throws any light upon the issues in the case.

"Mr. Russell: We propose by this offer to show that this man refused, under the contract—

"Mr. Wilson: On behalf of the plaintiff I am going to ask that counsel do not, by any pretense of argument of a legal question, disclose the contents of this letter, as that would be prejudicial to rights of the plaintiff.

"Mr. Russell: We propose to show his Honor that in conformity with this contract the plaintiff says that he was bound to build that ditch for his own use from the end of the main ditch to his own land—we will show in that contract, and it has been read to the jury and before the court here, that the plaintiff agrees to build this ditch down to this defendant's land, or if the defendant builds it he may build it, but he is to receive $125. We propose to show by this exhibit and by other testimony connected up that at the date of that exhibit he notified them as to his position—that he stated to them his position as to whether or not he would construct the ditch. *   *   *

"The Court: The plaintiff in this action never received this letter. Many of the statements in this letter if not all of them are self-serving declarations. Healy never did get this letter. At this time you have not shown that he ever got this letter. I think I must sustain the objection at this time."

Defendant's Exhibit "C," refused by the court, is in words and figures as follows, to wit:

"Defendant's Exhibit 'C.'

"Ovando, Mont., July 21, 1917.

"Mr. John J. Healey, Chicago, Ill.

"Dear Sir: I am writing to you about my land and water right purchased from you last summer, being 138 acres in section 5–14–11, Powell county, Mont.

"I have wanted to use water on my crops but there was none in the ditch. I walked up to the intake on the North

[69 Mont. 116.]

Fork and found that there was no headgate and that for some distance the entire ditch was washed out and there was no chance to get any water. My crops are burning up and I will get nothing for my labor this summer on account of having no water from the ditch which you agreed to give me.

"I now want a settlement of this matter and to know what you are going to do about the water.

"Another matter: Your agents at Missoula have given me credit on my note for $125, claiming it indorsed in lieu of your digging the ditch on my land. I have advised no such credit as I want and expect you to dig that ditch yourself. I so advise Mr. Glasscock and told him that I did not want that credited on my note. I now advise you that I did not know of that credit being made at the time and that same shall be canceled and you to dig that ditch on and to my land.

"Please let me know what you are going to do about these things at once.

"Very truly [Signed]   NICK E. GINOFF."

"Q. Mr. Ginoff, did you ever have any talk with Mr. Muckler, subsequent to the execution of the contract, in regard to the water right upon it?

"Mr. Wilson: We object to this as hearsay and incompetent, irrelevant, and immaterial.

"The Court: You cannot prove agency in that way. The statement that he had a talk with Mr. Muckler or that Mr. Muckler was then acting as agent of Mr. Healy would not be competent here, I do not think. Before these things here are made competent or relevant we must have some evidence showing that Mr. Muckler was the agent.

"Mr. Wilson: I have the further objection to urge that the statements are made in reference to the execution or performance of this contract. Now then, any statement made by Muckler independent of the contract or outside of it or in any talks he may have had with the witness would of course be wholly *ex parte* and immaterial as far as the plaintiff is con-

cerned. To the Exhibit No. "C," the plaintiff objects, in addition to his objection heretofore given, in so far as it has any application to counterclaim No. 2 contained in the answer, upon the ground that counterclaim No. 2 does not state facts sufficient to constitute a defense or counterclaim to plaintiff's complaint.

"The Court: This objection is sustained. To which ruling of the court the defendants by their counsel then and there duly excepted.

"Mr. Russell: I take it, then, from the ruling of the court, that no evidence will be admitted upon any of the matters alleged in the second counterclaim.

"The Court: That is correct. * * *

"Mr. Russell: I now make a further offer of Exhibit 'C,' formerly ruled upon by the court, for the first cause of action, for the purpose of showing the notice of the defendant that he would not construct the ditch himself; and I now offer in evidence Exhibit 'C,' parts 1 and 2, upon the first cause of action for the purpose of showing notice to the plaintiff of the defendant's refusal to construct the ditch under the so-called contract.

"Mr. Wilson: To which offer we object upon all the grounds stated in our original objection to the offer and upon the further ground that it is incompetent, irrelevant, and immaterial to the first cause of counterclaim set up in the answer, and as to that it is hearsay and self-serving and wholly immaterial.

"The Court: The objection is sustained." (Part 2 of Exhibit 'C' was the envelope addressed to J. E. Healy.)

In his reply, the plaintiff admits that during the summer of 1916 he offered the lands involved for sale, and that C. H. Muckler and W. R. Glasscok were his agents, "that defendants did enter into a contract to purchase with plaintiff, of said premises * * * and that defendants paid $500 of the purchase price * * * and received a conveyance therefor; * * * and plaintiff admits that defendants executed and

delivered to plaintiff the mortgage described in plaintiff's complaint herein as constituting the payment of the balance of the purchase price of said premises; that thereafter the defendants paid the sum of $1,000 upon said mortgage, being one of the notes secured by such mortgage.'' Further it is by plaintiff's reply admitted that ''on the sixteenth day of September, 1916, plaintiff and defendants entered into a contract whereby plaintiff agreed to sell to the defendants and the defendants agreed to purchase from the plaintiff the premises''; and further it is admitted that at the time of entering into the contract for the purchase of the land the defendants ''executed and delivered to the plaintiff the notes and mortgage set forth in plaintiff's complaint, and that the same were accepted and received by plaintiff as and for the purchase price of said premises, and were each purchase-price notes; and that the mortgage given therefor was for the use and benefit of the plaintiff.''

These admissions conclusively establish the agency of Muckler and Glasscok during the negotiations and in final consummation of the sale of the lands in question and as to the continuance of such agency, a reasonable inference may be drawn from the testimony contained in the record. Ginoff testified that when he first interviewed Glasscok respecting the land the latter referred to it is being ''our land'' and that Glasscok showed the defendant, Nick Ginoff, lands other than those purchased by the defendants in the same vicinity, and said that there was plenty of water with which to irrigate, not only the lands contracted for by the defendants, but the entire Kleinschmidt flat; further, that the defendants moved upon the land in the winter of 1916 and have been there ever since. He testified that in 1918 ''they'' were building a ditch for Dr. Tait from the Healy ditch, and by ''they'' he presumably has reference to plaintiff's agents, Muckler and Glasscok, and that ''they did not get any water down to Dr. Tait.'' When asked if the ditch is in any different condition now than it was in the year 1917 and since that time, he answered:

"There is a little bit of difference, but they done more work. They have done so little as to get enough for probably forty or fifty acres altogether.

"Q. Who was the only party who ever got any water out of this ditch for irrigation? A. Mr. Ryan was the only party I know of.

"Q. Do you know how much he has irrigated? A. I don't know. I suppose about forty acres."

The witness was then asked if he had ever made request of either Muckler or Glasscok, as the plaintiff's agents, to make repair of the ditch and to fix it so water would come down to defendants' lands and the court excluded such testimony. The witness was then asked:

"Did you ever have any conversation with either Glasscok or Muckler after you bought this land? A. Yes.

"Q. And directing your attention to such conversations you may have had, when was the first one that you had with them after the purchase of the land? A. In 1917 and 1918 and 1919, all the time.

"Q. Now, in 1917, what was the date of that conversation as near as you can get it? A. Probably it was some time in June.

"Q. June, 1917? A. Yes.

"Q. With whom did you have the conversation? A. With both of them, Mr. Muckler and Mr. Glasscok.

"Q. Where were you? A. They were coming up to the ranch and selling land.

"Q. You saw them at your ranch? A. Yes."

The court then refused to permit the witness to detail the conversations alluded to.

It appears clear to us from this evidence that Muckler and Glasscok continued as the agents of the plaintiff in making sales of land in the vicinity of those purchased by the defendants long after Exhibit "C" was written and mailed to C. H. Muckler at Missoula. We find nothing in the pleadings or proof indicating that the agency was terminated and as against

the principal we must hold that the notice to the agent Muckler was notice to the plaintiff. (Sec. 7959, Rev. Codes 1921.) "A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without ordinary negligence, incurred a liability or parted with value upon the faith thereof." (Sec. 7961, *Id.*) "An agent represents his principal for all purposes within the scope of his actual or ostensible authority." (Sec. 7957, *Id.*)

By its rulings, the trial court placed upon the defendants [7, 8] the burden of proving a continuation of the agency, but this is not the correct rule in this class of cases under the facts clearly appearing in support of defendants' case. Professor Mechem, in his splendid work on Agency, says that where there is "a conceded agency but the principal contends that it has been terminated; or an otherwise undoubted authority but the principal contends that it has been limited or restricted; or an ostensible authority which the principal contends was not the real one; and the like, the burden of proving that the fact was as he contends and that the other party had notice of it, where notice is necessary, would be upon the principal." (Mechem on Agency, 2d ed., sec. 298.)

"It cannot be doubted that where the authority of an agent is unwritten, and express oral authority is not satisfactorily shown, such authority may be implied from acts and circumstances, for while it is the general rule that the authority of an agent must be shown, it is also the rule that the authority need not be express, but may be implied. Manifestly, the proper way to show the extent of an agent's authority is to offer evidence of the orders or directions given him or of the rules adopted for his guidance by the principal. If there is no such evidence available it is proper to describe the work performed by the agent in the course of his employment, bringing it home to the knowledge and implied acquiescence of the principal." (1 Cal. Jur., sec. 21, p. 716.)

Again, our statute provides that there is a presumption "that a thing once proved to exist continues as long as is usual with things of that nature." (Subd. 32, sec. 10606, Rev. Codes 1921.) So that, under this presumption, in view of the plaintiff's agents' transactions had with the defendants and their continued visitations to the vicinity of the property sold to the defendants and repair work done upon the Healy ditch, a disputable presumption to say the least existed as to the continuance of Muckler and Glasscok in their activities as plaintiff's agents. Moreover, it is nowhere contended that the agency was at any time terminated nor was this made the basis of the court's exclusion of the offered exhibit.

The judgment is reversed and the cause remanded to the district court of Powell county, with directions to grant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.