KENNETH HACKENJOS v. KEMPER CHEVROLET COMPANY.[1]

No. 30,125.

December 7, 1934.

[1]Reported in 257 N. W. 518, 258 N. W. 433.

38

*Alvin B. Christofferson* and *James E. Markham,* for appellant.
*Fred Silverstein,* for respondent.

HOLT, JUSTICE.

Defendant appeals from an order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

The action is to recover for deceit and misrepresentation inducing plaintiff to enter a contract for the purchase of a truck from defendant. Defendant is a corporation and had in its employ one John Blomgren, who dealt with plaintiff. From the pleadings and evidence for plaintiff it appears that on February 22, 1933, he went to defendant's place of business in response to an advertisement that day appearing in the *St. Paul Pioneer Press,* reading:

"MEN with little money to finance trucks, have real job for 4 trucks starting Thursday morning. Hurry. See Blomgren, Kemper Chevrolet. 801 E. 7th."

Several persons interested in the job were at defendant's garage when plaintiff came. An appointment was made for the next day. Blomgren then took plaintiff and four other men over to where the new post office in Minneapolis was being built. The men were told by Blomgren that the job to haul concrete for the construction of the post office would last from 3½ to 5 months; that they would have to work with the truck 12 hours a day, 7 days in the week,

and receive 90 cents an hour. After viewing the work and on the assurance of Blomgren that it was of the kind represented, plaintiff, on February 23, was induced to sign a conditional sales contract for the purchase of a second-hand truck of defendant for $760.50. Plaintiff turned in his Dodge car as payment of $146 and paid $100 in cash in two payments, and $8.50 to make a change in the box of the truck so as to make it suitable to haul the concrete. He also paid out $21.88 for license for the truck. The balance was to be paid in monthly payments. Plaintiff testified that when Blomgren was asked how sure he was that plaintiff would be provided with work, he said: "Don't worry about that, we will have plenty of work for you, we will see that you have enough work for 3½ to 5 months and provide money to pay for your truck and provide a living for you besides." There was also corroboration of plaintiff's testimony that Blomgren represented that the post office job at 90 cents an hour for 12 hours a day and 7 days a week was available to plaintiff for 3½ to 5 months. As a matter of fact Blomgren did not know whether the job referred to would last for any length of time. He so testified. Of course he denies the alleged misrepresentation and claims that he knew nothing about the job; that he merely took the men to the contractor or man in charge and introduced plaintiff and the other four men to him and stepped out of hearing.

The day after buying the truck plaintiff went to the post office site in Minneapolis, and, with a crew, was put to hauling concrete. The work was not a 12-hour a day job for 7 days in the week. It was extremely sporadic, and all the time plaintiff could have from February 24 up to the first part of April, 1933, amounted to $102.80 at 90 cents an hour. At that time the contractor erecting the post office discarded the use of these small trucks in hauling the concrete and adopted other means of transporting it to the places where poured. Before the first payment came due on the conditional sales contract, defendant transferred it to a so-called finance company. Because the job did not produce what defendant represented, plaintiff was unable to make any payments, and the finance company promptly repossessed the truck. The result was that plaintiff lost what he parted with when induced to purchase the truck.

There was no exception to rulings during the trial save to the refusal to direct a verdict in favor of defendant, and *no exceptions taken to the charge when given.* In the motion for a new trial certain instructions are challenged. The principal assignment of error in this court is directed to the proposition that no actionable deceit or fraudulent representations were proved; hence defendant was entitled to a directed verdict and should now have judgment *non obstante.* The argument is that the alleged fraudulent representations related to promises to supply work in the future, and that the evidence does not show that defendant made such promises with the intention not to keep them—an essential element in actionable promissory fraud, as indicated by such decisions as Bigelow v. Barnes, 121 Minn. 148, 140 N. W. 1032, 45 L.R.A.(N.S.) 203; Maguire v. Maguire, 171 Minn. 492, 214 N. W. 666, 215 N. W. 522; Phelps v. Aurora State Bank, 186 Minn. 479, 243 N. W. 682; McCreight v. Davey Tree Expert Co. 191 Minn. 489, 254 N. W. 623; Crosby v. Crescent Oil Co. 192 Minn. 98, 255 N. W. 853. But the fraud and misrepresentation inducing plaintiff to enter the contract and part with his money and the Dodge car may be considered not as a promise to provide work in the future, but as a misrepresentation of the character of the then existing job. The job of hauling concrete was a present fact. Was it of the sort represented as to working time per day and week and duration? Blomgren on the witness stand admitted that he had no assurance that it would last for any length of time. The advertisement itself tends to deceive the reader into the belief that a worth while job was to be had by any man who could raise a little money to finance the purchase of a truck. Defendant had trucks for sale, and if a person could finance the purchase of one of its trucks he would be sure of a good job. It is readily perceived how a man in want of employment would do his utmost to raise the little money needed to finance the purchase so that he could secure the job which was of a sort to pay for the truck and at the same time provide a living. Representations that such a job was awaiting plaintiff were not true. The job was not of that sort. Blomgren so testified. We think the misrepresentations related to existing facts and were not in the

nature of promises to do something in the future. This was not a case of promissory representations in the sense used in the decisions above referred to. Holmes v. Wilkes, 130 Minn. 170, 153 N. W. 308, is nearer in point on the facts.

The verdict is also assailed as not supported by the evidence. The contract induced by fraud could have been rescinded and the parties placed *in statu quo*. But it appears that defendant at once turned over or sold the sales contract to a so-called finance company, which repossessed the truck because plaintiff was unable to make the monthly payment. In that situation the damage or loss to plaintiff may be considered the value of what he parted with— the measure of damages in case of rescission where the *status quo* cannot be achieved. Plaintiff parted with his Dodge car, which he says was considered worth $146, paid $100 cash, spent $8.50 on some change in the truck, and $21.88 for license, in all $276.38. The court charged the jury that a verdict up to $376.90 could be returned for plaintiff if in his favor. The verdict with interest returned was $397.31. Defendant admits that it juggled the figures so as to make the amount look larger and more attractive to the finance company than the actual transaction; so the price on the truck in the conditional sales contract was placed at $1,009.40 instead of the actual price of $760.50, and the down payment at $346.40 instead of what was the agreed value of the Dodge car and the amount of money parted with. We think the instruction was wrong as to the limit of recovery, and that the evidence does not warrant a verdict for more than $276.38, with interest since the commencement of the action.

The cause is remanded with direction to the court below to reduce the verdict to the amount just stated, and as so reduced the order will stand affirmed.

On Application For Reargument.

On January 15, 1935, the following opinion was filed:

Per Curiam.

Defendant petitions for a rehearing, claiming that the verdict, even as reduced by this court, is larger than the evidence warrants

in that an exhibit shows that the Dodge car was taken in at the price of $85. But plaintiff also testified that in the deal the Dodge car was valued at $146. We are not justified in reducing the verdict below the highest amount the jury could award under the evidence.

Plaintiff appeals from the clerk's taxation of costs. We think defendant should not be allowed the statutory costs of $25, for no exception was taken at the trial to the instruction which permitted the jury to render an excessive verdict; nor in the motion for new trial was the amount in which it was claimed to be excessive pointed out. The taxation for two appeal bonds cannot be sustained. It is true that "in all cases the prevailing party shall be allowed his disbursements necessarily paid or incurred" (2 Mason Minn. St. 1927, § 9486). But there was no need of two bonds on the appeal. The supersedeas bond should have been given in the first place. The clerk is directed to reduce the costs by $35. So reduced the taxation is affirmed.

