251 P.2d 542

WEITZEL et ux. v. JUKICH et ux.

No. 7861.

Supreme Court of Idaho.

Dec. 11, 1952.

Rehearing Denied Jan. 5, 1953.

McNaughton & Sanderson, Coeur d'Alene, and Bandelin, Bandelin & Ponack, Sandpoint, for appellants.

Stephen Bistline and Lyons & Greene, Sandpoint, for respondents.

KEETON, Justice.

Respondents, plaintiffs in the trial court, brought this action against appellants (defendants) to recover damages for alleged misrepresentation and deceit, claimed to be fraudulent, which induced the respondents to enter into a lease covering certain real estate.

On November 17, 1949, appellants published an ad in the Spokesman-Review, Spokane, Washington, reading:

"Grade A dairy farm, no stock, modern conveniences: phone electricity, mail, school bus route; good buildings, cut 300 tons hay a year. Samuels, Idaho, phone 17 F3, Sandpoint, Idaho."

Respondents read the ad and called upon the appellants advising they were looking for a dairy farm as described in the advertisement. The farm, later leased, consisted of approximately 400 acres, of which 150 acres were planted to hay. Pursuant to negotiations then and thereafter had, appellants leased the place for one year, beginning March 1, 1950. In addition to a cash payment, and other covenants undertaken by respondents, there was a provision in the lease that the hay raised on the hay land (150 acres) should be divided equally between the parties, each furnishing part of the labor necessary in harvesting.

Prior to the time the lease was entered into, appellants advised respondents that the farm would cut 300 tons of hay (referring to the 150 acres of hay land); further that appellants cut an average of two or two and a half tons of hay per acre, per year, on the land in question, and that in 1949 they (appellants) cut 400 tons of hay; "we cut

a minimum of three hundred and fifty tons and we have cut four hundred and fifty tons on that particular farm."; "We have always taken off a lot of hay—always taken off as I told you, three hundred ton of hay or better."

Respondent testified:

"Q. Well, now as I understand it, Mr. Jukich told you absolutely and unequivocally that that farm would produce three hundred tons of hay during the year that you had it, is that right? A. That is what he told us.

"Q. Did he guarantee that that farm would produce that? A. Why sure he did. He stood right there and swore up and down it would do it.

\* \* \* \* \* \*

"A. He said it had produced even more than that. Said that it would produce three hundred ton or even better."

Respondents alleged that such statements and representations were false, were known by the appellants to be false, and were intended to deceive respondents and induce them to enter into the lease in question, and that respondents, in reliance on said representations, entered into the lease.

The complaint further charges that the land so represented by appellants to produce three hundred or more tons of hay, in fact only produced seventy tons, and claimed damages for the difference between the value of the hay crop produced, and that which appellants represented, and stated it had and would produce.

An answer was filed, the case tried before a jury and verdict rendered in favor of respondents. From the judgment appellants appealed.

Testimony was introduced that in some of the prior years in which the appellants had stated the land produced three hundred or more tons of hay, a far less amount was in fact actually raised. One witness testified in the year 1945 his estimate of the hay produced was fifty tons. Other testimony was introduced that the land was not suitable to the raising of large hay crops, and would not produce three hundred tons in a normal year.

Appellants contend that the statements so made by appellants were mere representations or statements of opinion and not of existing facts, and should be construed as a future prophesy of what might or might not happen; that nothing was concealed or withheld; that the respondents could have ascertained the true facts, and secured other opinions or statements of what the hay land in question would or would not produce.

Elements of fraud generally consist of a representation or statement of a past or existing fact which is material, which is untrue; the speaker's knowledge of its falsity or ignorance of its truth; his intention that it should be acted on by the person to whom it is made; ignorance of its falsity on the part of the person to whom it is made and reliance on the representation; his right to rely upon it; his damage oc-

casioned thereby. 37 C.J.S., Fraud, § 3, page 215.

The essential elements of fraud, as above outlined, were given to the jury in the court's instruction No. 7, and the jury by its verdict must have found that deceit and fraud were practiced by the appellants on respondents.

■ Statements made to the respondents that the land had, in prior years, cut a minimum of 350 tons of hay, and as much as 450 tons, and "We have always taken off a lot of hay—always taken off as I told you, three hundred ton of hay or better" are not expressions of opinion, but are statements of material facts, and the statement that the appellants would guarantee an annual crop of 300 tons or more cannot be construed as a prophesy or opinion, or as something that may or may not occur at some future time.

■ The parties to this transaction did not stand on equal footing, nor did they have equal means of knowing the truth. The rule that where the parties stand on equal footing and have equal means of knowing the truth, "trade talk," "dealer's talk," "seller's talk," "seller's statements," do not amount to actionable misrepresentations, has no application here. 23 Am.Jur. 791, Sec. 33; Koch v. Rhodes, 57 Mont. 447, 188 P. 933; 23 Am.Jur. 787, Sec. 29 and 789, Sec. 32.

■ False statements found by the jury, by its verdict, to have been made and re-

lied on cannot be avoided by the appellants by the contention that the respondents could have, by independent investigation, ascertained the truth.

The appellants having stated what was untrue cannot now complain because respondents believed what they were told. Lack of caution on the part of respondents because they so believed, and the contention that respondents could have been made an independent investigation and determined the true facts, is no defense to the action. Lanning v. Sprague, 71 Idaho 138, 227 P. 2d 347; Fox v. Cosgriff, 66 Idaho 371, 159 P.2d 224.

■ Appellants complain of the court's refusal to give appellants' instruction No. 2 R, reading as follows:

"You are further instructed that the plaintiffs are not entitled to relief on the grounds of false representations where they do not rely upon them, but rely on their own judgment or investigations or their own examination of the property involved, or on the advice of third persons."

The requested instruction is a proper statement of the law. Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345.

Appellants complain and assign as error the giving of instruction No. 17, which told the jury:

" * * * the maximum measure of damages plaintiffs can recover in this action is the difference between the

value of the hay plaintiffs actually received from the property in question, and the value of the hay plaintiffs would have received had such property produced the amount of hay defendants represented to plaintiffs that said property would produce."

Respondents contended that their part of the hay crop raised from the hay land leased was 35 tons and had the representations and statements of appellants been true, they would have received 150 tons. The jury by its verdict allowed a recovery of $2,940, reduced by the trial court to $2,430. The amount of the damages was evidently found to be the market value of the 115 tons of hay not received by the respondents because of the shortage of the hay crop.

While some courts have adopted the rule covering damages in fraud cases to be the difference between the real value of the property purchased and the value which it would have had had the representations been true, 37 C.J.S., Fraud, § 143, page 477 (benefit of bargain rule), Idaho, and some other courts, including the Supreme Court of the United States, and the Federal Courts, have adopted the rule that a defrauded purchaser is limited in recovery of damages to the difference between the real value of the property purchased and the price paid, 37 C.J.S., Fraud, § 143, page 476 (out of pocket rule), that is, a person induced to enter into a contract by fraud is entitled to recover no more than the

amount he has actually lost and to allow him the difference between the actual and represented value would be giving him speculative damages in the shape of anticipated profits. In Smith v. Neeley, 39 Idaho 812, 231 P. 105, 106, this court said:

"* * * this court has adopted the rule * * * to the effect that in order to show damage from fraud, the purchaser of property must show that the property he obtained was of less value than the price paid for it. Frank v. Davis, 34 Idaho 678, 203 P. 287; Gridley v. Ross, 37 Idaho 693, 217 P. 989".

In Smith v. Johnson, 47 Idaho 468, 276 P. 320, this Court cited and followed the case of Smith v. Neeley, supra.

In Healy v. Ginoff, 69 Mont. 116, 220 P. 539, the court held:

"Where defendant was induced by fraud to purchase property, his measure of damages was the difference between the actual value of the property at the date of sale and the contract price."

In Sigafus v. Porter, 179 U.S. 116, 21 S.Ct. 34, 45 L.Ed. 113, the court held:

"The measure of damages in an action for deceit in the sale of property is not the difference between the value of the property as it proved to be and as it would have been if as represented, but is the difference between the real value of the property at the date of sale and the price paid, with interest

thereon, together with such outlays as were legitimately attributable to defendant's conduct, since the damages are limited to the direct pecuniary loss, if any, of the plaintiff, and will not cover the expected fruits of an unrealized speculation."

See also, Hackenjos v. Kemper Chevrolet Co., 193 Minn. 37, 257 N.W. 518, 258 N. W. 433; 27 C.J. 96; 37 C.J.S., Fraud, § 143.

The instruction above given (No. 17) covering the measure of damages, does not take into consideration the cost of cutting, saving, or marketing the hay crop, which items would of necessity have to be deducted before the damages, if any, could be determined.

It is my opinion (with which the other members of the Court do not agree) that a defrauded lessee is limited in his damages to the difference between the real value of the property or rights secured, that is, the value of the consideration passing to the lessee under the terms of the contract, and the price or consideration paid therefor, and in a fraud action he is entitled to recover his actual loss, if any, and cannot recover speculative or punitive damages in the form of anticipated profits. Smith v. Johnson, supra; Jesse M. Chase, Inc., v. Leonard, 69 Idaho 109, 203 P.2d 600, and cases cited supra.

Were the rule of damages as contended by respondents (benefit of bargain rule),

a vendee or lessee of land could get the land or benefit of the lease for nothing by showing that had the land or lease rights been as represented it would have been worth enough more than its actual value to wipe out the purchase money or price paid. Curtis v. Buzard, 254 Pa. 61, 98 A. 777.

The judgment is therefore reversed and remanded for new trial. Costs to appellants.

PORTER, Justice (concurring in part and dissenting in part).

█ I concur with the holding in the opinion by Justice Keeton that actionable fraud was shown in this case. I concur with the holding that the instruction given by the court as to the measure of damages was erroneous, and that the case should be remanded for new trial. I agree with the correctness of the statements of the "out-of-pocket" rule and the "benefit-of-bargain" rule used to measure damages in appropriate cases of fraud. I further agree that in Idaho we have followed the out-of-pocket rule. I do not concur with the holding that the out-of-pocket rule states the proper measure of damages in this case.

█ One of the two rules mentioned is generally adopted by a court as the proper measure of damages in a tort action for fraud and deceit when dealing with a contract or transaction for the sale or exchange of real or personal property, par-

ticularly where the fraud affects the value of the property. 24 Am.Jur., Fraud and Deceit, sec. 226, pp. 52–53. These rules are not exclusive and should only be used when appropriate under the facts. Selman v. Shirley, 161 Or. 582, 85 P.2d 384, 91 P.2d 312, 124 A.L.R. 1, 16. This principle was recognized in Thompson v. Walker, 56 Idaho 461, 55 P.2d 1300. In such case plaintiff sought to recover one year's delinquent interest on the first mortgage on the property purchased which respondents had falsely represented to have been paid. A nonsuit was granted on the theory that the measure of damages was the out-of-pocket rule and there was no proof thereunder. This court held that the out-of-pocket rule was not applicable because the action did not involve the value of the property, but in effect was an alleged misrepresentation as to the price to be paid; and that the amount of damages was the unpaid interest which the purchaser was compelled to pay.

The underlying principle is that the victim of fraud is entitled to compensation for every wrong which is the natural and proximate result of the fraud. The measure of damages which should be adopted under the facts of a case is the one which will effect such result. See Selman v. Shirley, supra, for an extended and instructive discussion of this whole subject.

The hay land was rented by respondents on a crop-sharing basis. Such rental was treated by respondents as separate and distinct from the remainder of the lease agreement, and appellants recognize in their brief that the meadow was separately rented upon a division of crop basis.

Where land is rented on a crop-sharing basis, the out-of-pocket rule, as a measure of damages for fraud, is inapplicable and inadequate. We are not in such case dealing with property sold or traded for an agreed or determinable value. An attempt to apply such rule, under such circumstances, could only result in immunity to the defendant and in no relief to the plaintiff. I am of the opinion that in a case such as the one at bar, where we are concerned with a rental on a crop-sharing basis and the plaintiff is induced by the fraud of defendant to spend his time and effort for a season in raising, caring for and harvesting a crop, the rule for the measure of damages should be analogous to the rule for the measure of damages where a crop is continually damaged throughout its growing season, which rule has been stated as follows:

"Where a crop is injured, from time to time throughout its growing season until its maturity, but is not destroyed, so that it is cultivated throughout the season, harvested and marketed, the damage may be measured by the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at that time, less the expense of fitting for market that portion of the

probable crop which was prevented from maturing by the injury." 25 C.J.S., Damages, § 85, page 613.

GIVENS, C. J., and TAYLOR and THOMAS, JJ., concur in the above opinion by PORTER, J.