## ADA M. COX v. WILLIAM RUFUS EDWARDS.[1]

February 21, 1913.

Nos. 17,837—(165).

**Questions for jury.**

In this, an action for breach of promise to marry, the making of the promise, and, if made, whether the release pleaded as a defense was obtained by fraud or duress, *held* proper issues for jury.

**Inference of prejudice from defect in charge to jury.**

Where there is an omission or defect in the charge upon a material issue, namely, in not stating that, where it is sought to avoid a release pleaded as a defense to a contract on the ground that it was procured by fraud and duress, the burden is upon the plaintiff to prove the fraud or duress by clear and satisfactory evidence, the inference is strong that prejudice results from the refusal to give a request correctly stating the law upon a matter bearing on such issue.

**Refusal to charge reversible error.**

The refusal to give such request, which was to the effect that, "in order to find duress in this case, you must find that there was such pressure or constraint as compelled the plaintiff to go against her will, and such as took away her free agency and destroyed her power of refusing to sign the release," *held* reversible error, in view of the evidence in the case.

**Promise indicating a present intention — fraud.**

Although fraud cannot generally be predicated on a promise to do an act in the future, still, where the promise implies a present state of mind or existing intention of the promisor, and such is not the fact, but the promisor, in order to obtain a release, falsely induces the promisee to believe in and

1 Reported in 139 N. W. 1070.

rely on the existence of such state of mind or present intention, such conduct may constitute legal "fraud."

**Charge to jury.**

In a breach of promise suit, where the promise is denied, and no matter is pleaded in avoidance or defense by reason of the previous impure life of plaintiff, the court correctly instructed the jury that, if such impure life did in fact exist, it was no defense, and could be considered by the jury only as bearing on the credibility of her testimony and in mitigation of damages.

Action in the district court for Ramsey county to recover $25,000 for breach of promise to marry. The answer alleged a former action between the same parties, for the same cause of action, and the execution and delivery of a release of all claims thereunder upon the payment of $250. The reply admitted plaintiff signed her name to a writing, but denied knowledge of its contents, and set up that the signature was obtained by fraud, duress and overreaching of plaintiff, and not with her will, knowledge and consent. The case was tried before Kelly, J., and a jury which returned a verdict in favor of plaintiff for $15,208. Defendant's motion for judgment notwithstanding the verdict was denied, and a motion for a new trial was granted unless plaintiff consented to a reduction of the verdict to $12,500. Plaintiff consented to the reduction. From the order denying the motion for judgment notwithstanding the verdict and granting the motion for a new trial, unless plaintiff agreed to the reduction of the verdict, defendant appealed. Order affirmed so far as it denied judgment notwithstanding the verdict. Order reversed so far as it denied a new trial.

*Owen Morris,* for appellant.

*Drill & Drill* and *Stan J. Donnelly,* for respondent.

HOLT, J.

The action is for damages for breach of promise to marry, wherein the defense is a denial of the promise, and also a settlement and release of the cause of action. The trial resulted in a large verdict for plaintiff, and defendant appeals from the order denying his alternative motion for judgment non obstante veredicto or a new trial.

We apprehend that the reputation of neither party to this action

120 M.—33.

will be enhanced by a discussion of the testimony herein. Nor are we disposed to sully the pages of our Reports with the same, except in so far as it may be necessary to allude thereto in considering the errors alleged.

In denying defendant's motion for a directed verdict, the court stated that the question whether or not plaintiff's cause of action was not barred by the release was a close one. With this opinion we fully agree. We are also of the opinion that the question is extremely close whether the evidence supports the finding that defendant ever promised to marry plaintiff. The improbability of such a promise being made under the circumstances detailed by plaintiff, want of any allusion to marriage in the voluminous correspondence of the parties after the time of the alleged engagement, and their subsequent conduct, wholly at variance with what would be expected if an engagement of marriage existed between them, strongly corroborates the contention of defendant that no promise was ever made. With some hesitancy we have, however, come to the conclusion that the trial court was justified in refusing to direct a verdict for defendant.

But, where a verdict has so doubtful or meager support in the evidence, the inference of prejudice from errors in rulings or inadequate instructions becomes persuasive and strong. The learned and experienced trial judge manifested his fairness and impartiality to the litigants, and a desire that the jury should also be imbued with the idea that as between plaintiff and defendant the pot should not call the kettle black. But on one phase of the controversy the legal rights of defendant were not fully protected by the charge.

Previous to the institution of the present action, plaintiff, through another attorney, had begun an action against defendant for the same cause. Subsequently the parties met, and, as defendant claims, settled the cause of action. In the instant case the defendant pleaded this settlement as a bar, setting out the written contract of settlement and release, signed and acknowledged by plaintiff. In her reply plaintiff admitted the execution of the instrument, but sought to avoid it by alleging that it was obtained by fraud and duress. Un-

der the issue thus raised the burden rested on plaintiff to show that the release was so procured. The law is to the effect that the written instrument "becomes a 'strong wall of evidence,' not to be lightly overcome by unsatisfactory oral testimony." McCall v. Bushnell, 41 Minn. 37, 42 N. W. 545. Justice Mitchell, in Cummings v. Baars, 36 Minn. 350, 354, 31 N. W. 449, says: "There is a strong presumption that the written instrument, which the parties have deliberately executed, expresses their intentions; and if the written contract is to go for nothing, and the one party may oppose his oath to that of the other as to fraud, written contracts would amount to very little."

In Christianson v. Chicago, St. P., M. & O. Ry. Co. 67 Minn. 94, 98, 69 N. W. 640, the court observes that "where a party has, for a valuable consideration, executed a solemn instrument of release, there ought to be pretty strong and clear evidence impeaching it to warrant a court or jury in avoiding it." In Winter v. Great Northern Ry. Co. 118 Minn. 487, 136 N. W. 1089, the trial court charged the jury, with reference to a release pleaded as a defense to which plaintiff replied that it was obtained by fraud, that "the burden was on the plaintiff, to establish the alleged fraud by evidence clear and convincing to a reasonable certainty," and Chief Justice Start, in writing the opinion, characterized the instructions of the court as "clear and fair, neither party excepting to any of them." Section 8374, 3 Dunnell, Minn. Digest, states that the evidence of fraud must be clear. In cases like the one now before the court, where a formal release executed by plaintiff is set up as a defense, and plaintiff seeks to avoid its legal effect on the ground that it was procured through the fraud or deception of defendant, the burden is undoubtedly on plaintiff to prove the fraud, for the presumption is also in aid of the validity of the writing on that score. Of course, what is here said as to fraud is equally applicable to duress.

In the charge the court wholly omitted to state upon which litigant rested the burden of proof upon this issue, and no reference was made to the quality or character of evidence required to sustain the charge of fraud or duress. In fact, the inference from the charge is rather

that defendant had the burden of proof on this proposition; for, in speaking of the release, the court says:

"I present this question at the outset, because, if you find from the evidence that the plaintiff signed and delivered the release freely and voluntarily, and was not fraudulently deceived by the defendant, or coerced by threats by him to sign and deliver this release, she is bound by its terms, and this action must end immediately by a verdict for the defendant. She admits signing the paper, but denies reading it, and claims that the defendant induced her to sign it by fraud and duress. If you find from the evidence that the plaintiff, in signing and delivering this release, on the payment of $250 made to her, was not induced or compelled to do so by any fraudulent misrepresentation, or by any duress or threats exercised over her by defendant, but that it was executed and delivered freely and voluntarily by the plaintiff, then the release is absolutely binding on plaintiff, and discharges the defendant." And again:

"And I charge you that, if you find from the evidence that the plaintiff freely, and uninfluenced by falsehood or fear of defendant, agreed to this release," it disposes of the case.

The above defect in the charge, in and of itself, is not available to defendant upon this appeal; for it is not specifically assigned as error, and was not called to the attention of the trial court by request to charge or otherwise. But it is important when we consider the prejudicial effect of a refusal to give the requested instruction now to be discussed.

As to the claim of duress, plaintiff testified that defendant threatened to use his power with the police force and with men of influence to drive plaintiff out of St. Paul and prevent her obtaining employment unless she signed the release, and the court instructed the jury with reference thereto as follows:

"As another ground for avoiding the release the plaintiff has pleaded that the defendant threatened her, at the time she signed it,

with arrest by the police, with loss of business opportunities, through the influence which he claimed to have and to exert in this community. Now, if you believe from the evidence that any such threats were made by the defendant to the plaintiff, and that they were made to intimidate her, and that they did intimidate her to the extent that she was induced thereby to sign this release through fear, then the plaintiff is not bound by the release, although the defendant's threats were mere talk or bombast"—but refused to give this instruction, requested by defendant:

"In order to find duress in this case, you must find that there was such pressure or constraint as compelled the plaintiff to go against her will, and such as took away her free agency and destroyed her power of refusing to sign the release."

The court also refused to charge, as requested by defendant, that there was no evidence of duress. Assuming that there was, we think defendant entitled to the definition of duress contained in the instruction requested. From all definitions of duress, it is apparent that the gravamen is a coercion of the will by physical or mental restraint, so that the victim of the duress does not act as a free moral agent in respect to the matter at stake. And this thought should be clearly conveyed to the jury. Considering the state of the evidence, and the defect or omission in the charge hereinbefore referred to, we conclude it was error to refuse the instruction requested, which instruction we believe to be in harmony with the decision in Tapley v. Tapley, 10 Minn. 360 (448), 88 Am. Dec. 76, and in Joannin v. Ogilvie, 49 Minn. 564, 52 N. W. 217, 16 L.R.A. 376, 32 Am. St. 581, where this language is used:

"And the modern authorities generally hold that such pressure or constraint as compels a man to go against his will, and virtually takes away his free agency, and destroys the power of refusing to comply with the unlawful demand of another, will constitute duress, irrespective of the manifestation or apprehension of physical force."

. See, also, State v. Daniels, 118 Minn. 155, 136 N. W. 584, and 1 Dunnell, Minn. Digest, § 2848.

We consider unsound defendant's contention that a false promise to do something in the future can under no circumstances constitute fraud. We have no doubt that if defendant, in order to procure the release from plaintiff, made the promise to marry her, with no intention then had to fulfil the same, but simply to deceive her into executing such release, and she, in reliance on the promise, was induced to give it, the defendant's promise, though relating to something to be fulfilled in the future, may constitute fraud which avoids the release. Generally speaking, fraud cannot be predicated on promises. But a promise to marry is based on the present state of mind of the promisor. It implies the existence of a present intention. If, now, there exists no such intention, but the promisor nevertheless, for the sole purpose of inducing the promisee to act, falsely represents that the intention is there, and the promisee, in reliance thereupon, acts, we believe legal fraud is shown. There is a misrepresentation of a present material fact or state. Such is the principle announced in Albitz v. Minneapolis & Pac. Ry. Co. 40 Minn. 476, 478, 42 N. W. 394, in this language:

"But if the agent, in making those representations, intended to create in plaintiffs the belief that it was, as a fact, the then intention of the defendant to do the things mentioned, and the representations might be understood, and were understood by plaintiffs, as asserting that fact, then a charge of fraud can be based upon the representations."

There is no merit in the criticism of the court's instruction to the effect that, if plaintiff led an impure life prior to the alleged promise of marriage, it would not be a defense, but could be considered only as bearing on the credibility of her evidence and in mitigation of damages. Defendant denied the promise. Except as indicated by the court, plaintiff's prior life would constitute a defense only by way of confession and avoidance; that is, when a promise of marriage is made by one party, in ignorance of the unchaste character of the other party to the engagement, the contract may be avoided by the

one who through excusable ignorance became bound, or, in other words, the previous unchaste life of one of the contracting parties may be a valid defense in an action for breach of promise to marry, but in order to be a defense it must be pleaded as such. Kniffen v. McConnell, 30 N. Y. 285; Bowman v. Bowman, 153 Ind. 498, 55 N. E. 422.

It is plain that, if the defendant knew of the bad character of plaintiff when he promised to marry her, her life and character could in no event avoid the contract or excuse nonperformance. Even those of bad repute and vile life, if otherwise capable of contracting marriage, have the legal right to make a valid promise to marry. In this case the promise to marry was denied by defendant, and no attempt was made to plead any ground for avoiding the promise, if made, or excusing a breach thereof.

We deem it unnecessary to discuss any other error assigned. None are vital to a determination of the case, nor are any of those now urged likely to arise at another trial. For the error pointed out, considered in connection with the whole record and the strong showing by defendant of newly discovered evidence, we conclude that a new trial should be had.

The order, in so far as it denied judgment notwithstanding the verdict, is affirmed; but, in so far as it denied a new trial, it is reversed, and a new trial is granted.