## BASIL ROMAN v. GEORGE W. LORENCE.[1]

### March 6, 1925.

### No. 24,341.

**When breaking of promise constitutes actionable fraud.**
    1. Fraud cannot be predicated upon a broken promise; but a material promise made with no intention of keeping it, and with the intention of deceiving and defrauding, and which results in one party getting the money or property of another, constitutes actionable fraud.

**Finding of fraud sustained.**
    2. The evidence sustains a finding that the two defendants against whom the verdict was rendered made a promise to the plaintiff, without an intention of keeping it, that they would sell a farm for which through them he traded a house and lot, and failing to do so would give him back his house and lot, that he relied thereon, and that such promise constituted actionable fraud.

    *Headnote 1.  See Fraud, 26 C. J. p. 1087, § 25; p. 1095, § 26; p. 1167, § 77.
    Headnote 2.  See Exchange of Property, 23 C. J. p. 240, § 95.

    Action in the district court for St. Louis county to recover $3,000. The case was tried before Grannis, J., and a jury which returned a verdict for $2,700. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant George W. Lorence appealed. Affirmed.

    *W. F. Dacey,* for appellant.
    *Jenswold, Jenswold & Dahle,* for respondent.

    DIBELL, J.
    Action to recover the value of a lot traded by the plaintiff for a farm, and $200 paid in the exchange, the plaintiff claiming that he rescinded for fraud. There was a verdict for the plaintiff against the defendants Lorence and Rayner. The defendant Lorence appeals from the order denying his alternative motion for judgment notwithstanding or a new trial.

    [1]Reported in 202 N. W. 707.

The plaintiff Roman was the owner of a house and lot in the vicinity of the steel plant in Duluth. It was listed with the defendant Rayner for sale at $2,800. In April, 1921, the lot was traded through the agency of Rayner for a farm in Wisconsin. The trade value of the farm was fixed at $3,000 and the plaintiff paid the difference of $200. His claim is that he was induced to make the trade by the fraudulent promise of the defendants, not intended to be kept, that they would sell the farm for $3,000 within 30 days, and failing to do so would give him back his house and lot.

1. Fraud cannot be predicated upon a broken promise; but if a party induces a contract by a promise material to it, not intending to keep it, making it to deceive and defraud, and it has that result and thereby he gets the money or property of another, there is actionable fraud. Hansen v. Daniel Hayes Co. 152 Minn. 222, 188 N. W. 317; Holmes v. Wilkes, 130 Minn. 170, 153 N. W. 308; Cox v. Edwards, 120 Minn. 512, 139 N. W. 1070; Schaeffer v. Rush, 118 Minn. 174, 136 N. W. 754; McElrath v. Electric Inv. Co. 114 Minn. 358, 131 N. W. 380.

2. The evidence is sufficient to sustain a finding that Rayner assured Roman that he would sell the Wisconsin farm for $3,000 within 30 days, and that if he failed to do so he would get back his house and lot and the $200 which he was to pay; and that this promise was fraudulently made to deceive, with no intention that it would be kept, and was relied upon by the plaintiff to his damage. The important question is whether Lorence was so connected with the transaction as to be liable along with Rayner for the fraud.

Rayner and Roman visited the Wisconsin land. When they returned it was arranged that Roman should see Lorence at the People's State Bank of Duluth, of which he was cashier, the next morning. Rayner left a note for Lorence. It was not preserved. Roman says it read:

"Lorence, I and Bill Roman went down to see the farm yesterday and he agreed to trade his house for the farm. The price of the farm is $3,000, and the price of the house is $2,800. I made an agreement with him to sell the farm in thirty days. If we can't sell in thirty days to give his house and the money back."

In response to an inquiry as to what Lorence said after reading the note Roman testified:

"He said, 'You and Joe Rayner went down to see the farm yesterday?' I said, 'Yes, I did,' 'And did you agree to trade your house for the farm,' he said. 'Yes, I do agree on this condition, if he sell the farm in thirty days and give the $3,000 to me; if he don't sell the farm in thirty days to give my house back again and the money I give to him.' Lorence he say, 'Yes, that is what the papers say,' and I tell him, 'I know what Rayner say last night but I want you to understand,' I says, 'if you agree to me to give my house back again if Rayner don't sell the farm,' I says. 'Oh, yes, we will do that; he says, 'if Joe Rayner sell the farm he will give you $3,000; if he don't sell the farm in thirty days we will give you your house and money back.' I says, 'All right,' and then he asked me for the papers for the house and I had them all in an envelope and give them to him."

Roman had his title papers with him. Lorence seems to have had some knowledge of the title. A deed from Roman, the grantee blank, was executed under the supervision of Lorence, who retained it. Some months later he inserted the names of himself, Kuehnow, who was president of the bank, and Rayner, as grantees. The title to the Wisconsin farm was in the Gary Land & Building Company, of which Kuehnow was president. Kuehnow claims that the beneficial ownership was in Rayner. Rayner claims that it was in the company. When the names of the grantees were inserted Rayner claims he received his one-third interest in payment of money owing from the Gary Company, and Lorence claimed he received his one-third as security for an uncertain sum which Kuehnow and the Gary Company were owing him. About July 1, the three grantees put a $1,000 mortgage upon the house and lot and divided the proceeds. Kuehnow and Lorence deeded to Rayner a month later, and Rayner traded for other property in Wisconsin. Kuehnow claims that he was not interested in the Wisconsin farm, though he took a third, participated in the $1,000 mortgage, and received something when he and Lorence deeded to Rayner. Lor-

ence was active in the details of the transaction. He advanced money in discharging an encumbrance. Upon the failure of the trade Roman says that Lorence offered to give him back his house if he would pay the expenses which had been incurred, but later refused and insisted upon retaining the $200, and finally wanted to trade other Gary property. The evidence sustains a finding that Lorence was working with Rayner from the beginning with a common purpose and that he along with Rayner made the claimed promise with the intention that it would not be kept. This was the finding of the jury. We are not required to demonstrate its correctness. It comes to us with the approval of the trial court. It is enough that the evidence sustains it.

It should not be understood that the evidence is all one way. We put it in a light favorable to Roman as it must be considered in reviewing the verdict. Lorence denies receiving from Rayner a note such as the plaintiff claims. He claims that it was quite different, and denies making the promise claimed. He says that he undertook to help Roman in the details of the transaction, and had no interest in the land. Later, in any event, he had an interest, and his position was hostile to Roman. The jury might have found that Roman was excitable and vacillating; that his house was undesirable; that he was anxious to dispose of it in any way possible; that the trade was made without fraud and with an understanding no more definite than that the defendants would help him dispose of the land, and that there was no legal liability upon their part. Such a finding would find satisfactory support in the evidence and would be sustained. The jury did not make it.

We have examined all the assignments—there are upwards of 90 of them—and find none requiring a reversal. Nor is there need of a detailed discussion of them. They relate to rulings on evidence, instructions to the jury, and matters relating to rescission and laches. The trial consumed a week. The substantial question is whether there was evidence from which the jury could find Lorence equally liable with Rayner. The evidence justified a finding either way.

Order affirmed.