## ALICE V. MAGUIRE AND OTHERS v. MARY MAUD MAGUIRE AND ANOTHER.[1]

### June 17, 1927.

### Nos. 25,928, 26,265.

**Gist of fraud in action on false promissory representations.**

    1.   In an action based upon false promissory representations, which may constitute actionable fraud, the gist of the fraud is not the failure to perform the promise, but the fraudulent intent of the promisor, at the time of making the promise, not to faithfully perform the promise and to thereby deceive the promisee.

    A broken promise does not prove fraud.   It must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made.

**Application of doctrine of res judicata.**

    2.   If a particular fact at issue in a second action was decided in a prior action involving the same parties, no matter how different the form of actions, the doctrine of res adjudicata is applicable.

Fraud, 26 C. J. p. 1087 n. 43; p. 1094 n. 99.
Judgments, 34 C. J. p. 743 n. 76; p. 745 n. 79; p. 813 n. 66; p. 869 n. 56; p. 902 n. 92.

---

See note in 10 L. R. A. (N. S.) 640; 12 R. C. L. 261; 2 R. C. L. Supp. 1410; 5 R. C. L. Supp. 640; 6 R. C. L. Supp. 702.

[1]Reported in 214 N. W. 666.

Defendants appealed from a judgment of the district court for Hennepin county, Salmon, J. Reversed.

Plaintiffs appealed from that part of the judgment specified in the first sentence of the opinion on page 498. Affirmed.

*H. E. Fryberger* and *Charles B. Elliott*, for plaintiffs.

*Orin M. Oulman* and *Harry S. Swensen*, for defendants.

## DEFENDANTS' APPEAL.

WILSON, C. J.

Defendants appealed from a judgment for the specific performance of an oral contract.

Plaintiffs Alice V. Maguire, Thomas F. Maguire, and Theresa Maguire Justice are adult children of Thomas M. Maguire. Their mother, Agnes B. Maguire, died June 25, 1906. Ada L. Maguire, who became the stepmother on October 28, 1908, was one of the original defendants herein. She died April 29, 1924, and Mary Maud Maguire and Myrtle M. Oulman, as her representatives, were substituted as defendants.

On October 18, 1905, Agnes B. Maguire and husband executed, but did not deliver until March, 1906, deeds conveying her property, which included that now in controversy, to the two daughters. Before her mother's death, Theresa quitclaimed all the property to her sister Alice, who took possession under such deeds, managed the property, sold some of it, and kept an account of the income and disbursements.

In 1915 the father and son sued the two daughters for an accounting, claiming that Alice held the property in trust. Defendants claimed to own the property. A written agreement was made and signed by the father and the defendants. It in part reads:

"As a compromise and settlement of the above entitled action, and of all claims of each party against the other, whether set forth in the complaint herein or otherwise,—it is * * * agreed * * * *:"

1. Defendants shall convey certain (Lake street) property to the father.

2. Alice V. Maguire shall pay the father $5,500 in cash and give her note to him for $500.

3. Alice V. Maguire shall permit her books to be audited and if she has not correctly accounted for all income she shall pay one-half of any excess.

4. "In consideration of the foregoing agreements, on the part of the defendants, the plaintiffs hereby release and discharge the defendants and each of them from any and all claims, demands and obligations of every name and nature, whether as set forth in the complaint or otherwise, from the beginning of the world to the present time, and particularly, do the plaintiffs  *  *  *  release  *  *  *  all claim  *  *  *  to or upon" certain property, and to convey the same to Alice V. Maguire.

On September 21, 1915, said cause "came on for trial." All parties with their counsel appeared. The stipulation for settlement was read to the court and put in evidence. The father testified that if the settlement was carried out he would pay the son the equivalent of what the son would have received had the mother died, owning the property, intestate, and that the son had agreed to settle on the basis of the written agreement, which the son had not signed, and let some judge of the district court fix the amount he was to receive from the father. Witnesses were examined and an accounting was made between the parties. The son testified that he refused to sign the stipulation because he was not named as a party to it. His testimony shows that he knew the purpose of being before the judge. On September 30, 1915, the judge made formal findings of fact which embraced the stipulation, found that the son agreed in substance to its terms, covered the matter of the accounting, and found that. when the stipulation was carried out it would be in full settlement of all claims between the parties. The conclusions of law were that the father owned the Lake street property free of all claims of defendants; that the father should pay the son $3,521.81; that Alice V. Maguire owned the Nicollet avenue property free of all claims of plaintiffs; that the father, son, and Theresa should quitclaim to Alice; that the children should give a quitclaim deed of the Lake street property to the father. Judgment was entered October 9, 1915. On December 10, 1915, further stipulation was entered into

between the parties for a supplemental decree reciting that the quitclaim deeds had been executed and delivered, the money paid as required by the judgment, and that a supplemental decree should be made. On December 14, 1915, a supplemental decree was made adjudging Thomas M. Maguire to be the owner in fee of the Lake street property free of all claims of the other parties to the suit.

This action seeks to recover the Lake street property conveyed and the $6,000 paid pursuant to said judgment, and to have said judgment vacated. Inferentially it seeks the specific performance of an alleged oral contract made at the time of entering into said stipulation wherein it was agreed that the father would hold said property in trust until his death, when, subject to the dower interest of the stepmother if then living, it would go to the three children equally; also that the father agreed not to make a will but if he did he would give two-thirds of said property to his three children; and that if the Lake street property was conveyed to him he would greatly improve it for the benefit of the children.

1. The court found, in accordance with the claim of plaintiffs, that the father specifically represented, stipulated, and agreed to the provisions of the oral contract just above mentioned; that the representations were falsely and fraudulently made by the father; and that at the time he had no intention of performing the same, but that they were made only for the purpose of deceiving said children who made said settlement and stipulation in reliance thereon. It was also found that similar representations were made to the son, who in reliance thereon entered into said settlement and joined his sisters in the deed of the Lake street property to the father.

We are thus brought to the consideration of the finding of fraud. Much of the parol evidence received was admissible because of the claim of fraud. Such evidence was directed at the fraud which induced the contract and was not intended to vary or add new terms to the contract. False promissory representations made without any intention of keeping them may constitute actionable fraud. The record discloses testimony to the effect that the oral agreement was made. It also shows that thereafter the father made a will giving the property to the stepmother to the substantial exclusion

of the children. The record shows that on November 18, 1916, the father and his wife deeded the Lake street real estate to one Richard who on the same day conveyed it to the father and his wife as joint tenants. He also procured a deed from the purchaser at the foreclosure sale as hereinafter mentioned. He did not fulfil his promises. Does that justify a finding of fraud?

The gist of the fraud is not the failure to perform the promise but the fraudulent intent of the promisor, at the time of making the promise, not to faithfully perform the promise and to deceive the promisee by the false promise. By keeping this in mind we easily come to a logical conclusion. The misrepresentation of his then existing intent to perform must be shown. A subsequent intention to break a promise does not constitute fraud. There is slight authority holding that the fraud is established by showing nonperformance. C. T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. 39; Carr v. Craig, 138 Iowa, 526, 116 N. W. 721. We are of the opinion that the prevailing rule is that failure to fulfil the promise alone will not authorize the conclusion of fraud. A broken promise does not prove fraud. It must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made. Smith v. Vosika, 163 Minn. 12, 203 N. W. 428; Roman v. Lorence, 162 Minn. 198, 202 N. W. 707; Hansen v. Daniel Hayes Co. 152 Minn. 222, 188 N. W. 317; Arcade Inv. Co. v. Hawley, 139 Minn. 27, 165 N. W. 477; Nelson v. Berkner, 139 Minn. 301, 166 N. W. 347; Holmes v. Wilkes, 130 Minn. 170, 153 N. W. 308; Cox v. Edwards, 120 Minn. 512, 139 N. W. 1070; Nelson v. Shelby Mfg. & Imp. Co. 96 Ala. 515, 11 So. 695, 38 Am. St. 116; C. T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. 39, note, p. 47; Brison v. Brison, 75 Cal. 525, 17 Pac. 689, 7 Am. St. 189; Lawrence v. Gayetty, 78 Cal. 126, 20 Pac. 382, 12 Am. St. 29; Cerny v. Paxton & Gallagher Co. 78 Neb. 134, 110 N. W. 882, 10 L. R. A. (N. S.) 640, and note; Sallies v. Johnson, 85 Conn. 77, 81 Atl. 974, Ann. Cas. 1913A, 386; Blackburn v. Morrison, 29 Okla. 510, 118 Pac. 402, Ann. Cas. 1913A, 523; 12 R. C. L. 261, § 28; 26 C. J. 1093, § 26, and 1087, § 25.

We are unable to find any substantial proof relating to the state of mind of the father when he made the oral promises. There is evidence that he desired and had a reconciliation with his children resulting from the settlement, and that he was apparently pleased. Mr. H. E. Fryberger was the attorney for the plaintiffs in the 1915 action. He was the spokesman in practically all the negotiations for the settlement which originated with him. After the settlement he took from the father a mortgage for $2,900 on the Lake street property which he promptly transferred to another. The mortgage was foreclosed. The assignee, having bid the property in on foreclosure sale, quitclaimed on February 26, 1918, to the father and wife as joint tenants. Fryberger had some connection with this transaction and was still the attorney for the father "in a limited extent." On the witness stand, he volunteered the information that his former client, the father, told him in February, 1918, that "he was going to work some hocus pocus trying to fool the children." He also testified:

"Q. But you had knowledge of the deed and you had knowledge it was a joint tenancy deed, also quit-claim deed in form otherwise.

"A. It wasn't any deed at all. It was mere sham from beginning to end. * * *

"Q. I am asking you this question, if you didn't know at the time that that deed was executed that it had in there the joint tenancy clause.

"A. No, I don't remember anything about it.

"Q. And your name appears on that deed?

"A. I don't remember anything about the transaction, except I remember what Thomas M. Maguire told me about it, he was trying to put across a fraud right there, what he told me."

Fryberger's testimony does not point to fraud at the time of making the oral promises nor does it disclose any definite act of fraud. Indeed, it amounts to a mere conclusion. We conclude that the evidence fails to establish the claim that the oral promises were induced by fraud.

2.　Shorn of the question of fraud, the record leaves the judgment, which specifically decrees Thomas M. Maguire to own the property here involved free of all claims of the daughters and son, unimpeached. That judgment is binding between the parties now before the court. It operates as an estoppel by judgment as to the fact of the father's ownership. Sheets v. Ramer, 125 Minn. 98, 145 N. W. 787; Cronan v. Wolfe, 138 Minn. 308, 164 N. W. 1018; Venie v. Harriet State Bank, 146 Minn. 142, 178 N. W. 170; Fox v. Fox, 154 Minn. 169, 191 N. W. 420; Klinkert v. Streissguth, 155 Minn. 388, 193 N. W. 687. If a particular fact at issue in the second action was decided in the first, no matter how different the form of actions, the doctrine of "estoppel by judgment," which includes the doctrine of "estoppel by verdict," is applicable. Such doctrine of estoppel is applicable when some controlling fact material to the determination of both actions has been adjudicated in a prior action and the same fact is again at issue between the same parties or their privies. This doctrine is one of several branches of the doctrine of res adjudicata. The theory is that a controversy should be ended when it is once litigated.

Reversed.

### PLAINTIFFS' APPEAL.

On October 7, 1927, the following opinion was filed:

PER CURIAM.

Plaintiffs appealed from the judgment in so far as it did not award to plaintiffs the whole of the Lake street property, it having given them only an undivided two-thirds thereof. We did not formally pass upon the appeal because it would be impossible for plaintiffs to prevail in the face of the reversal upon defendants' appeal.

The judgment from which plaintiffs appealed is affirmed.

Upon motion of defendants it is ordered that the lower court be and it is hereby directed to enter judgment in favor of defendants and against the plaintiffs upon the merits of the action.