IN RE LIQUIDATION OF FARMERS STATE BANK OF CLAREMONT.

E. W. CLARK v. J. N. PEYTON.[1]

October 14, 1932.

No. 29,047.

[1]Reported in 244 N. W. 550.

*Melvin, Brown & Sherman,* for appellant.
*D. F. Nordstrom,* for respondent.

HOLT, J.

The commissioner of banks, in the liquidation of the insolvent Farmers State Bank of Claremont, obtained an order requiring the receiver of the Federal Surety Company, the assignee of a claim against the bank, duly filed and allowed in the sum of $21,896.58, to show cause why he should not be excluded from receiving the second dividend, for the reason that he had been overpaid in the first more than would be the share of the surety from the second and final dividend of 3.56 per cent. Upon the evidence adduced at the hearing, the court made findings in favor of the commissioner. The receiver of the surety company moved for amended findings or a new trial. From the order denying the motion the receiver appeals.

The facts are these: The bank closed and was taken over by respondent December 3, 1924. Notice to file claims was duly given in 1925, and Dodge county filed a claim for money on deposit, which was duly allowed in the sum of $21,896.58. The bank had furnished the county a depository bond in the sum of $50,000 with personal sureties. Sometime prior to the closing of the bank the county demanded of it an additional bond, and the Federal Surety Company, in response thereto, executed its bond in the sum of $20,000. After the filing and allowance of its claim the county sued, in one action, the sureties on both bonds and obtained judgment against

the personal sureties for $21,929.40 and against the Federal Surety Company for $20,000, interest and costs, which judgment the surety company paid, and the county thereupon assigned its said claim against the bank to the company. In July, 1928, a ten per cent dividend was paid by the commissioner, upon the claims filed and allowed, appellant, as the receiver of the surety company, receiving $2,189.66 upon the claim assigned to it by the county of Dodge, as above stated.

When the bank procured the additional bond of the Federal Surety Company, it was on condition that the latter should be furnished security or indemnity to the amount of $10,000. The bank offered three notes secured by mortgages amounting to $10,300; but the company refused to accept assignment thereof from the bank. Thereupon the bank transferred the notes and mortgages to William A. Harmer, its president, who assigned to the surety company, which accepted the same. Harmer also agreed to indemnify the surety company against all loss.

In January, 1928, the commissioner of banks commenced in the district court of Ramsey county an action against the surety company for conversion of the said three notes and mortgages, demanding judgment for their value. The action was removed to the federal court, issue joined, and trial had, resulting in findings in favor of the surety company and conclusions of law that the commissioner was "estopped to assert any right, title, or interest in and to any of the collateral hereinbefore described; that the defendant is entitled to judgment herein that plaintiff take nothing in this action, and for defendant's costs and disbursements." These findings were offered in evidence by respondent herein and received without objection; likewise the pleadings.

Certain testimony of William A. Harmer, as contained in the settled case in the federal court, was received over the objection of appellant. The ruling is made the ground for an assignment of error. The judgment in the federal court is not made a part of the record or settled case in this proceeding, but from the latter we find an admission that a judgment was entered as directed in

the findings and conclusions of law made by the federal court and that it has become final. The learned trial court found in this proceeding that the bank, prior to its closing, had pledged, as collateral security with the surety company, the three notes mentioned, aggregating $10,300, two of which it had collected amounting to $5,900. And the conclusion was that the collateral should have reduced the surety company's claim by $10,300, or at least by $5,900, the amount actually received; and therefore, even if the last sum were used, there was an overpayment by the first dividend of more than the second or final dividend amounts to. The court also concluded as a matter of law that the notes mentioned were at all times the property of the bank, that the proceedings in the federal court did not constitute a former adjudication, or res judicata, and that respondent is legally entitled to offset the overpayment made in the first dividend against the final.

The appellant's many assignments of error may be reduced to two, viz. error in receiving certain pages of the testimony from the settled case in the federal court, and error in the conclusion of law that the judgment in the federal court is not conclusive upon the determinative matters in this proceeding.

It may be conceded that it was error to admit from the settled case in the federal court the testimony there given by Harmer, showing that the three notes in question belonged to the bank, or, more accurately, that the bank's records show them as assets and no transfer or assignment thereof. But we do not think appellant was harmed thereby, for we are of the opinion that Judge Molyneaux's very full and detailed findings establish that such was the fact. There would be no meaning in applying estoppel unless to destroy an existing title or ownership. The title to these three notes was necessarily involved in the federal suit. To the two which had been paid to appellant, respondent was adjudged to have no right, title, or interest; and to the third, this respondent in that suit dismissed its cause of action on the trial. It would seem to follow that the judgment therein entered is res judicata between the parties, who were the same as in this proceeding, and the sub-

ject matter the same, viz. the title to the identical three notes. The notes having been adjudged not to be the bank's, it was not entitled to any reduction on the claim filed and allowed, upon which the first dividend was paid. That the question is res judicata and that there is an estoppel by verdict (findings of the federal court) needs no discussion. We merely refer to the following cases in this court: Hardin v. Palmerlee, 28 Minn. 450, 10 N. W. 773; Irish Am. Bank v. Ludlum, 56 Minn. 317, 57 N. W. 927; Swank v. St. Paul City Ry. Co. 61 Minn. 423, 63 N. W. 1088; Wagener v. City of St. Paul, 82 Minn. 148, 84 N. W. 734; Sheets v. Ramer, 125 Minn. 98, 145 N. W. 787; Eder v. Fink, 147 Minn. 438, 180 N. W. 542; Maguire v. Maguire, 171 Minn. 492, 214 N. W. 666, 215 N. W. 522. Other decisions are referred to and commented on in these cited cases.

From another legal viewpoint of the undisputed facts, it seems clear that respondent cannot maintain that there was any overpayment by the first dividend. The claim of $21,896.58 was the claim of the county of Dodge, filed and allowed as a general claim against the bank. There was no offset to be made against that amount. The three notes above mentioned were not held by the county, but had been in the possession of appellant since long before the bank closed its doors. The claim as allowed and in the full sum of $21,896.58 belonged to the county until it was assigned to appellant, when it paid the judgment the county had obtained against the sureties upon the depository bonds. There was no offset or counterclaim thereto as long as the county held it. As assignee of the claim, appellant was entitled to the ten per cent dividend directed to be paid. Except the dividend of $2,189.66 so paid, the respondent has paid nothing upon the claim the county held against the bank and assigned to appellant. Respondent has no right to have applied upon that claim either the contribution the surety company obtained from the sureties on the personal bond or the indemnity it obtained from Harmer as a condition to furnishing its depository bond. As assignee of the allowed claim of Dodge county, the surety company stands in the shoes of the county. Hence the only possible theory upon which respondent could hope

to avoid paying the surety company the dividends paid to the general creditors, upon their allowed claims, would be to establish a cause of action in favor of the bank and against the surety company which might be used as an offset or counterclaim to its claim as assignee of Dodge county. And no other cause of action is presented or suggested by this record than the one for the conversion of the two notes herein mentioned which it collected. At that point you have the same cause of action which heretofore has been determined against respondent in the federal court by final judgment.

The order is reversed in so far only as it excludes appellant from receiving the final dividend directed to be paid upon the claims of general creditors filed and allowed herein.

OLSEN, J. (concurring).

I concur in the result. The Federal Surety Company, on paying the $20,000 bond to the county, was entitled to subrogation to the claim of the county against the bank. It properly received an assignment of the claim of the county against the bank, and was entitled to dividends thereon to the extent necessary to repay what it had paid out. It appears however that there was another bond, given by personal sureties, covering the same county money in the bank, and the surety company demanded and received contribution from these personal sureties; also that at the time the bond was given certain notes were transferred by the bank through its president to the surety company as collateral security for its giving the bond. On those notes the surety company has collected $5,900. My view is that the county, the bank, the personal sureties on the other bond, and the surety company were all parties in interest in all these matters, and that the surety company should not be and is not entitled to collect or receive from any or all these sources any greater amount than what it has actually expended. It should not be permitted to make a profit out of these transactions.

I concur in the result on the ground that it is not shown that the surety company, by receipt of the dividend in question, will receive more than sufficient to repay what it has paid out including legiti-

mate expenses. The judgment in the federal court in the action for conversion, as I understand it, goes no further than to establish that the notes there in question were transferred by the bank through its president to the surety company as security or collateral to its bond, and that the surety company had the right to collect the notes and apply their proceeds in repayment of what it had expended. The surety company held legal title to the notes, but only as security. The surety company had but the one single claim for repayment of what it had paid out on its bond and necessary expenses. It was not entitled to any more, and whatever it collected from the notes or from the cosureties on the other bond should go to reduce its claim as against the bank. But it was entitled to receive the dividends on the full amount of the bank's claim until it was repaid in full.