## W. P. McCREIGHT v. DAVEY TREE EXPERT COMPANY.[1]

May 4, 1934.

No. 29,762.

[1]Reported in 254 N. W. 623.

490

*J. A. Mansfield,* for appellant.
*Joseph J. Granbeck* and *Ralph M. McCareins,* for respondent.

*STONE, Justice.*

Action in *quasi* contract for money had and received. Plaintiff had a verdict, and defendant appeals from the order denying its motion for judgment notwithstanding or a new trial.

Plaintiff entered defendant's employ December 15, 1927, under a written contract. In addition to the terms of employment, it embodied a subscription by plaintiff for 35 shares of a specified class of stock in defendant corporation. That subscription was subject to the condition that if the contract were canceled before the stock was paid for plaintiff was to be refunded all his payments, with interest at six per cent per annum. The payments so made aggregate $854, the amount, with interest, which plaintiff seeks to recover.

February 10, 1931, plaintiff having entered the employment of a competitor, he was paid by defendant over $700, a cash balance to his credit. He also demanded refund of the payments on account of his stock purchase. In lieu thereof the matter was disposed of by written agreement, indorsed on the original contract of December 15, 1927, as follows:

"In lieu of the cancelation of this agreement, we mutually agree to the issuance of eleven shares of Class B stock of the Davey Tree

Expert Co. to the Employe [plaintiff] and his reimbursement in the amount of $2.50 in cash as full settlement for the amount of his present investment."

This contract of "full settlement" was signed by both plaintiff and defendant. The original contract was surrendered by the latter to the former. Plaintiff received a certificate for the 11 shares of stock and $2.50 in cash. Upon the contract of February 10, 1931, rests the defense. It is evidenced not alone by the indorsement on the contract of employment. A certificate had been issued for the 35 shares of stock for which plaintiff originally subscribed. He surrendered that certificate with this memorandum indorsed:

"This certificate canceled by mutual agreement involving the issuance of Certificate #102, being that part of the original purchase now paid in."

That memorandum was signed by Mr. Davey for defendant and by plaintiff.

The complaint declares simply for money had and received. The reply admits the contract of settlement, pleaded in bar by the answer, but alleges that it was induced by false and fraudulent representations that stock issued pursuant thereto, with the small item of cash, "had a value equivalent to the amount of money due and owing to plaintiff." Belatedly, and by amended reply, plaintiff finally took the position upon which his case went to trial. Thereby he repeated his first claim of fraud and gave it eleventh hour amplification by averring that defendant falsely and fraudulently "represented that because of lack of cash at that time defendant did not want to pay plaintiff the money then due on his contract but that if plaintiff would then take said eleven (11) shares of stock and two and 50/100 dollars ($2.50) in cash, that in the late spring of that year or at any time thereafter, defendant would pay plaintiff the amount of his investment as set forth in the complaint and take back said eleven (11) shares of stock. That plaintiff was induced thereby to accept said eleven (11) shares of stock and said sum of two and 50/100 dollars ($2.50) relying upon the representations

then and there made by defendant as aforesaid and believing same to be true."

The record is devoid of evidence of false representation of the value of the stock. Plaintiff testified to a statement by Mr. Davey that:

"However conditions as they are you know in the spring of the year, we are always more or less hard pressed for funds owing to the fact that we are putting these men into the field with no return."

The promissory undertaking then made by Mr. Davey, according to plaintiff's testimony, was this:

"However, I will write out—give you 11 shares of stock and $2.50 now and then later on in the spring or summer we will take that stock off your hands and give you the money you have coming."

Plaintiff testified further:

"That is the only reason that I took the stock because he had promised me the money at a later date and I took the stock as a collateral until I received the money and he told me the stock was worth all the money I had coming and I signed the agreement under those conditions. In fact I did not pay much attention to the agreement."

For defendant, there is explicit denial of plaintiff's claim. A few letters passing between the parties after February 10, 1931, have implications much more favorable to defendant than himself, but yet leave the question of oral promise by defendant in the realm of fact, if it is relevant, which it is not.

There is no claim for plaintiff that the real contract was but partially integrated in the written memorandum of "settlement." The case was not tried and so could not be and was not presented here on that theory. No such claim would be tenable. Even where there is but partial integration, a parol, contemporaneous agreement is inoperative to vary or contradict those terms which have been reduced to writing. Horn v. Hansen, 56 Minn. 43, 57 N. W. 315, 22 L. R. A. 617; Shinners v. Ford, 151 Minn. 328, 186 N. W. 704; Merchants Nat. Bank v. Bryngelson, 160 Minn. 205, 199 N. W. 905;

Restatement, Contracts, § 238. Although this point was not presented by argument, it seems appropriate, if not necessary, to establish it as the first premise of a decision leading to an order for judgment *non obstante.*

■ It is inescapable, on the testimony of plaintiff himself, that the thing which solely induced him to make the settlement of February 10, 1931, was the alleged promise to pay him his money later in the spring. The case is in the much tangled field of the kind of fraud resulting from promissory undertakings. See annotations, 51 A. L. R. 46, 68 A. L. R. 635; 3 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3827. There is authority *contra,* but we are already aligned with the view that "a contractual promise made with the undisclosed intention of not performing it is fraud." Restatement, Contracts, § 473. That section is self-qualified thus:

"Though a promise that could in no event be binding, or a mere prediction, may involve the same representation of mental attitude as if the promise were made for sufficient consideration, the representation is not fraud unless there is implied  *  *  *  an assertion of other facts. One who is informed as to the law would not be deceived, and the consequences of ignorance of the law are here, as generally, not sufficient basis on which to found legal relief." (Id. Comment d.)

Apropos of that is this comment from Nelson v. Berkner, 139 Minn. 301, 307, 166 N. W. 347, 349:

"So with a fraudulent promissory representation which is plainly contradicted by the undertaking or the stipulations in the written agreement. The promisee would then know that the promise was false, or could not be kept, if what was written was to have any effect, and consequently could not rely" on the extraneous oral promise.

Suppose a horse sold by bill of sale with express warranty of soundness "except spavin on right hind leg." The purchaser's ignorance of the law that the writing integrates the bargain cannot help him. He is barred from claiming, in an action for the purchase

price, that the seller represented to him, fraudulently or otherwise, that the protuberance on the equine's right hock was not a spavin at all. Likewise, the maker of a promissory note cannot claim that the payee fraudulently promised to extend the time of payment or accept something other than money in payment. Were the law otherwise, there would be an absurd futility in written contracts which it is the purpose of the parol evidence rule to prevent. There is here an express contract barring recovery *quasi ex contractu.* Seifert v. Union B. & M. Mfg. Co. 191 Minn. 362, 254 N. W. 273, is not only different but also opposite, because there it was the elimination of the supposed actual contract which permitted recovery.

■ It may be added that fraud cannot be predicated upon the mere fact that a promise has been broken. Phelps v. Aurora State Bank, 186 Minn. 479, 243 N. W. 682. There must be evidence to justify a trier of fact in concluding that, when the promise was made, there was no intention of performing it. There is no such showing concerning the promise upon which plaintiff relies. Mr. Davey's testimonial denial of the promise reasonably aids not at all the conclusion that there never was intention of performance. In making such adjustments, especially in periods of financial stress, it is matter of common experience that, with or without a contract in writing, there are expressions of intention, or even promises, *dehors* the contract, to give more or accept less of performance than the contract calls for. Such expressions or promises are normally made in honesty and generosity, even though not performed later. Many of them are performed to the letter. It would be as wrong morally as legally, as offensive to logic as to law, to hold that mere denial and nonperformance are evidence that, if a promise was made, it was made fraudulently.

The typical defendant in such cases simply denies making the promise. If in any case one is so lacking in both honesty and intelligence as to both deny the promise and also aver intention to perform, it will be time enough to apply the proposition that a defendant cannot "consistently claim both that it did not make the representation," but yet intended "to carry out or make good such a representation." Woods-Faulkner & Co. v. Michelson (C. C. A.)

63 F. (2d) 569, 573. Such an impossible straddle would be plain asininity and so not permissible. But this defendant, and all intelligent defendants in similar cases, honest or not, simply deny the promise. Such denial implies not at all that, if the promise were made, there was no intention to perform. And it certainly does not bar the defendant, when the evidence is all in, from saying to the plaintiff: "Even though the trier of fact may believe I made the promise, there is no proof that I did so fraudulently because of an intention not to perform." Bad indeed would be the case of the honest man who has made no such promise, if when falsely charged with it, he may not deny it without having his truth considered as some evidence either that there was such undertaking or that it was deceitfully made.

The order appealed from will be reversed with directions to enter judgment for defendant notwithstanding the verdict.

So ordered.

*HILTON, Justice* (dissenting).

I dissent. The verdict of the jury established that the promise had been made and that it was later broken. True, that is not enough to sustain a claim of fraud. I cannot agree with the statement in the majority opinion that the record makes no showing that when the promise was made there was no intention of performing it, and hence no fraud. The evidence and the reasonable inferences to be drawn therefrom, to my mind, are much stronger in favor of the verdict on that point than against it. The majority opinion fails to take into consideration the circumstances of the parties and the significance of Davey's representations to plaintiff, first, that because of action taken by the directors of the company plaintiff at that time could not have cash; second, that the company was hard pressed for funds, when in fact it had, as stated in Davey's deposition, an "ample supply of money on deposit in the banks, and in addition had an extended line of credit [$600,000] at the banks." Davey could have had but one purpose in mind in making those statements, and that was to induce plaintiff to accept stock instead of the money that he was then entitled to. The

representation which finally persuaded plaintiff to accept stock, the actual sale value of which he did not know, was that at a later time when the company would have ample funds it would give him the money and take the stock back. It is also significant that the amount Davey promised for the return of the stock was the sum then due plaintiff and not what the stock might be worth at the time of its return. The representation as to the then financial condition of the company proved false. There was then no reason why the directors should have taken the action as represented by Davey; the jury had a right to believe that such representation was also false. The promise to do something in the future having been made and acceptance thereof induced upon false representations as to the existing facts, the jury had a right to believe that the promise was made with a fraudulent intent of not performing it and that plaintiff had a right to and did rely thereon. The trial court was of the same mind and, in a well considered memorandum, so expressed itself. The plaintiff twice sent back the stock to defendant and demanded the payment to him of the promised money. The letters of the defendant to plaintiff in which payment was refused strongly indicate that there never was any intention on its part to carry out the promise that the jury found had been made. Davey's testimonial denial of making the promise is also a circumstance properly to be considered in determining whether there was an intention to perform. A promise having been made, Davey's denial of having made it is inconsistent with an intention of performing it. In Woods-Faulkner & Co. v. Michelson (C. C. A.) 63 F. (2d) 569, plaintiff alleged that he was induced to purchase certain shares of stock by false and fraudulent representations made by the defendant to the effect that it would repurchase the stock at the same price. The court stated [63 F. (2d) 573]:

"It is observed, too, that defendant, by its answer, denied having made this representation [in the instant case denial was made by Davey in his deposition], and it likewise denied having authorized any such representation to be made by its agents. These denials would seem to imply a denial of an intention to make good such

representation. Defendant could not consistently claim both that it did not make the representation, yet that it intended to carry out or make good such a representation." (Citing cases.)

See also, Tatum v. Orange & N. W. Ry. Co. (Tex. Com. App.) 245 S. W. 231; Texas Employers Ins. Assn. v. Knouff (Tex. Civ. App.) 297 S. W. 799.

The facts here bring this case within the rule adopted and applied in Nelson v. Berkner, 139 Minn. 301, 307, 166 N. W. 347, 349, a general statement from which is quoted in the majority opinion but which was not applied to the facts in that case. The rule there applied is:

"Promissory statements may be made in terms which imply that a certain condition of things exists at the time, and form the basis of the future things. When they are of this description, if they are intentionally false, they are fraudulent, and form the basis of a right of rescission."

In that case plaintiff sued to recover money paid on a contract for the purchase of a farm on the ground of misrepresentations, among others, that there were a certain number of acres under cultivation; that the land was as good for general farming as that of other farms in the county; and that, in case plaintiff could not make a success of farming the land the first year, the $3,000 paid, with interest, should be refunded, which was contrary to the terms of the contract. Defendant denied making the representations and recited what he claimed was actually said and done. The jury believed plaintiff, and the court said [139 Minn. 308]:

"The jury could find that there was a fraudulent promise predicated upon misrepresentations concerning the productiveness and cultivated acreage of the farm."

It is further my opinion that the evidence and circumstances in this case more strongly support the verdict than those in Roman v. Lorence, 162 Minn. 198, 202 N. W. 707, in which this court, although conceding that the evidence would have sustained a contrary finding on the issue of fraud, affirmed the trial court's order denying

498

the motion of defendant for judgment notwithstanding or for a new trial.

*I. M. OLSEN, Justice* (dissenting).

I do not agree that there should be judgment ordered for defendant. The evidence as to fraud is not so conclusive against the verdict as to justify such order. The defect in the evidence, if any, is not such that we can say as a matter of law that it may not be remedied on the new trial. While the record and the statements thereof in Justice Hilton's dissenting opinion impress me as showing evidence sufficient to sustain the verdict, I would not object to a new trial.

Another reason why I believe judgment should not be ordered is that it seems to me probable that plaintiff has a right to recover his money irrespective of the issue of fraud. The action is one to recover money had and received. He had paid to defendant a sum of $854 to apply on a purchase of stock, under an agreement that he, being an employe of defendant, should be repaid this money at any time if he resigned or ceased to be such employe. He quit and demanded payment. He was told by one of defendant's officers, with whom he was dealing, that on account of lack of available funds at that time of year (in February) and because of some action on the part of defendant's board of directors, payment could not then be made, but was assured by said officer that later in the spring or summer, when funds would be coming in, the money owing would then be paid to him; that in the meantime the officer would issue to him 11 shares of stock for plaintiff to hold until the payment was made. Plaintiff consented to this arrangement and, in reliance thereon, signed the so-called settlement agreement and received the 11 shares of stock. To me it appears that a good cause of action for money had and received was shown; that in equity and good conscience plaintiff is entitled to recover. In equity we do not strictly construe technical terms or words of writings. Plaintiff did not get what he had good cause to believe he was getting by taking the stock and signing the settlement agreement, coupled with the oral agreement of defendant's officer

that the defendant would take back the stock and then pay the money owing. Defendant argued that the oral agreement later to pay the money contradicts the terms of the written settlement agreement and so is of no avail. It does not do so in express terms. In the case of Seifert v. Union B. & M. Mfg. Co. 191 Minn. 362, 254 N. W. 273, a very similar situation was presented. Stock was sold and issued to plaintiff. After the stock was paid for and on delivery thereof, the president of the corporation gave to plaintiff a letter acknowledging receipt of payment and reciting that, in consideration of the purchase, "we agree to sell them" (the shares) "for you or purchase them ourselves, within 30 days after you notify us that you wish to sell them." This agreement was held invalid because the president of the corporation had no authority to make it, but recovery, on equitable grounds, for money had and received, was sustained. In the present case, the agreement was held of no avail because fraud was not sufficiently shown. I see no material difference as to the law in these two cases. The only difference in the facts is that in the Seifert case the agreement to repurchase was in the form of a written letter, while in the present case it was oral.