## MARVIN A. NORTHROP v. HARRY C. PIPER AND OTHERS.[1]

February 19, 1937.

No. 30,832.

*Clarence T. Lowell, Smith, Waldorf & Sehm,* and *Wilson & Wilson,* for appellant.

*Junell, Driscoll, Fletcher, Dorsey & Barker,* for respondents.

STONE, JUSTICE.

The trial of this action to recover damages for fraud resulted in the direction of a verdict for the defendants. Plaintiff appeals from the order denying his motion for a new trial.

The case is involved and the facts complex. But it is susceptible of a summarization more than just to plaintiff's theory, along these lines: During the World War plaintiff saw service as an air pilot and came out as a reserve air officer. In 1921 he established a business of his own in buying and selling war surplus aviation material. Early in 1927 he made contact with defendant Yarnell and through him with the other defendants. One result was that in the spring of 1928 the defendants incorporated, under the laws of Delaware, the Northrop Airplane Company.

Plaintiff's charge of fraud, as far as it is supported by the evidence, and on the assumption that defendant Yarnell was the agent of the other defendants, boils down to this: Defendants said that they would form a large airplane company, giving plaintiff's name

[1]Reported in 271 N. W. 487.

and plaintiff himself a prominent place therein; that this corporation would take over plaintiff's business, including its good will; that they would pay plaintiff the reasonable value thereof. Principally he complains that he was led to believe "that he would be the principal controlling figure in said corporation, the general sales-manager thereof." His main disappointed hope seems to have been that he was to be president of the new concern. At the trial, the charge was thus stated by Mr. Lowell, of counsel for plaintiff, as follows: "Our contention is, by means of fraud practiced upon him, that the defendants took over and acquired his good will; his consent to that act was secured by fraud."

Plaintiff and defendant Yarnell were especially active in the attempted promotion of the new enterprise, and therein considerable business was transacted, largely through or with the assistance of plaintiff, who in the spring of 1928 made a journey to Europe at the expense of his associates for the purpose of purchasing airplane engines and other equipment and generally to investigate the field.

Further details are unnecessary because all the representations, concerning which plaintiff testifies, were made to him well before August 27, 1928. He had assisted in transacting much business under its name for the Northrop Airplane Company up to that time. On that date that corporation and plaintiff entered into the following contract:

"We, the Northrop Airplane Company and Marvin A. Northrop, have this date compared accounts and agreed on the settlement of all joint accounts as follows:

"As compensation for all past services for the Northrop Airplane Company, Marvin A. Northrop agrees to accept a commission on the sale of altimeters, which has just been made, of forty per cent (40%) of the net profits of said sale of approximately five thousand (5000) altimeters, and when this payment has been made it is understood that all compensation for past services to the Northrop Airplane Company is paid in full, including time prior to incorporation.

"It is further understood that Marvin A. Northrop agrees to act as salesman for the Northrop Airplane Company and will accept as

compensation for such services a commission of twenty-five per cent (25%) of the net profits on the sale of any merchandise for the Northrop Airplane Company stock.

"The agreement as to future compensation is made for an indefinite period and may be canceled by either party serving ten days' written notice to the other.

"Dated at Minneapolis, Minnesota, this 27th day of August, 1928."

Plaintiff makes no claim that he was deceived as to the contents of that agreement. Testimonially, he admitted as much and specifically that he was aware that his "services" could be terminated on ten days' notice. His contention was that the contract covered only his "services." But he cannot stop there. As to plaintiff and Northrop Airplane Company, that contract, to the extent of its coverage, integrated their contractual obligations as of its date. Whatever else it did, it fixed plaintiff's status in respect to the company.

That ends the case. There being no deceit as to contents of the document and no question of its binding quality or its effect as to plaintiff's status in respect to the corporation, the inescapable answer is that, whatever negotiations, or even contracts, had preceded in respect to his actual or hoped for status in the new business, he agreed contractually that from August 27, 1928, on he was to be a salesman only. And even that relationship was subject to termination as indicated. It was terminated by notice January 29, 1929, on or about which date the Northrop Airplane Company was liquidated.

There is some testimony by plaintiff as to certain items of airplane equipment which he transferred to defendants or to the Northrop Airplane Company which have not been paid for. But this not being an action for the price of merchandise sold, we are not now concerned with those items. Nor is there any evidence justifying a conclusion that by fraud or otherwise defendants, or any of them, acquired any benefit from plaintiff's good will except for the time he was working with and for them or for the Northrop Airplane Company, before and after the contract of August 27, 1928,

when they were entitled to whatever benefit there was in his personal good will.

Plaintiff's case is one sounding in promissory misrepresentations, the law of which has been much discussed in written and oral argument. We see no occasion for much reëxamination of the law on that subject. The alleged misrepresentations have to do with plaintiff's status in a business which he claims he attempted to promote with defendants. The defect fatal to his thesis is that his own admittedly binding contract irrevocably fixed his status in such fashion as to make his claims, all based upon representations antecedent to the contract, untenable.

Plaintiff's case is one of hope deferred rather than of fraudulent misrepresentations, within the rule of Nelson v. Berkner, 139 Minn. 301, 307, 166 N. W. 347, 349, that there is no fraud in a "promissory representation which is plainly contradicted by the undertaking or stipulations" of a binding written contract. See also McCreight v. Davey Tree Expert Co. 191 Minn. 489, 254 N. W. 623.

The case is easily and broadly distinguishable from those applying the rule of Remington v. Savage, 148 Minn. 405, 408, 182 N. W. 524, 525, which is that fraud in a proper case may be used "to challenge the contract as a whole." Obviously, that rule does not apply here for the simple reason that plaintiff does not challenge the contract of August 27, 1928. On the contrary, he admitted testimonially its binding effect, at least as to his services, which admission, of course, includes also the status in which his services were rendered.

Order affirmed.

Mr. Chief Justice Gallagher and Mr. Justice Peterson, not having been members of the court when this case was argued and submitted, took no part in its consideration or decision.